STATE OF NORTH CAROLINA v. ERNEST GARLAND ALLEN

No. 115A96

(Filed 24 July 1997)

1. **Criminal Law § 1032 (NCI4th Rev.)— first-degree murder—life without parole—constitutional power to parole—no violation of separation of powers**

A sentence of life imprisonment without parole for first-degree murder did not violate the Separation of Powers Clause of the North Carolina Constitution. Although defendant argues that the power to parole has been a right of the executive branch upon which the legislative branch may not infringe, the present Constitution in Article III, Section 5(6) explicitly states that the Governor's power to affect the sentence of a defendant does not include the ability to parole.

**Am Jur 2d, Criminal Law §§ 627, 630; Pardon and Parole §§ 73-75.**

**Validity of statutes prohibiting or restricting parole, probation, or suspension of sentence in cases of violent crimes. 100 ALR3d 431.**

2. **Criminal Law § 1604 (NCI4th Rev.)— first-degree murder—life without parole—clemency power of Governor—not infringed**

The clemency power of the Governor is not infringed upon by N.C.G.S. § 15A-1380.5, which allows defendants sentenced to life imprisonment without parole the right to have their cases reviewed by a superior court judge after twenty-five years of imprisonment and every two years thereafter if the sentence has not been altered or commuted. This statute allows defendants not already benefitted by the Governor to have their case reviewed by a superior court judge but does not affect the Governor's clemency power in any way.

**Am Jur 2d, Pardon and Parole §§ 14, 15, 79, 80.**

3. **Constitutional Law § 374 (NCI4th)— life without parole—constitutional**

"Life imprisonment without parole" falls within the meaning of the constitutional term "imprisonment" and is authorized by

the North Carolina Constitution. N.C. Const. Art. XI, § 1 (amended 1996).

**Am Jur 2d, Criminal Law §§ 627, 630; Pardon and Parole §§ 73-77.**

**4. Constitutional Law § 374 (NCI4th)— first-degree murder— life without parole—no violation of Due Process or Law of the Land**

The sentencing scheme employed by the trial court when sentencing a first-degree murder defendant to life does not violate the Due Process Clause or the Law of the Land Clause embodied in the United States or the North Carolina Constitutions. Defendant argued that N.C.G.S. § 14-17 provides as punishment for first-degree murder death or life without parole pursuant to N.C.G.S. § 15A-2000 and that N.C.G.S. § 15A-2000(b) only uses "life imprisonment" and does not include "life without parole," so that the trial court should have sentenced defendant only to life imprisonment, but the purpose of N.C.G.S. § 15A-2000 is to supply the procedural guidelines for the sentencing proceeding and any ambiguity is cleared by N.C.G.S. § 15A-2002, through which the legislature defines life imprisonment as life without parole.

**Am Jur 2d, Criminal Law §§ 627, 630; Pardon and Parole §§ 73-77.**

**5. Constitutional Law § 374 (NCI4th)— life without parole— not unusual**

A sentence of life imprisonment without the possibility of parole does not violate North Carolina's constitutional prohibition against cruel and unusual punishment by being unusual in restricting the governor's clemency power. Furthermore, defendant cites no authority showing that his sentence is unusual under North Carolina law.

**Am Jur 2d, Criminal Law §§ 627, 630; Pardon and Parole §§ 73-77.**

**6. Assault and Battery § 81 (NCI4th)— discharging firearm into occupied property—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss charges of discharging a firearm into occupied property and felony murder based on that charge where the evidence tended to show that the victims were sitting alone in a car in the

parking lot where they worked; defendant appeared outside the car and remained there, firing the shots that killed one victim and wounded the other; and direct testimony by the survivor described defendant as lying about halfway across the hood of a truck that was parked next to the survivor's vehicle.

**Am Jur 2d, Assault and Battery §§ 90-96.**

**7. Evidence and Witnesses § 339 (NCI4th)— first-degree murder of spouse—prior assault—admissible**

The trial court did not err in a first-degree murder prosecution by admitting evidence of a prior assault on the murder victim by defendant (her husband). Under N.C.G.S. § 8C-1, Rule 404(b), evidence of other wrongs, crimes, or acts is admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, entrapment, or accident, and, where a husband is accused of killing his wife, the State may introduce evidence that encompasses his married life in order to prove malice, intent, and ill will toward the victim. The prior assault on the victim is relevant to show defendant's intent to kill his wife.

**Am Jur 2d, Evidence § 324; Homicide §§ 310, 311.**

**Admissibility of evidence of prior physical acts of spousal abuse committed by defendant accused of murdering spouse or former spouse. 24 ALR5th 465.**

**8. Appeal and Error §§ 147, 341 (NCI4th)— limiting instruction not given—not raised at trial—no assignment of error—not before Supreme Court**

A first-degree murder defendant's argument that the trial court erred by not giving a limiting instruction as to a prior assault was not properly before the Supreme Court where defendant did not raise the issue at trial and did not specifically and distinctly assign plain error in the record.

**Am Jur 2d, Appellate Review §§ 614-617.**

**9. Evidence and Witnesses § 222 (NCI4th)— flight—instructions—evidence sufficient**

The trial court did not err in a first-degree murder prosecution by instructing the jury on the issue of flight where defendant shot and killed his wife and wounded another victim as they sat in a parked car, drove from the scene, and was not apprehended until later that night in another county. Jury instructions relating

to the issue of flight are proper as long as there is some evidence reasonably supporting the theory that defendant fled after commission of the crime charged.

**Am Jur 2d, Evidence §§ 532-535.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Downs, J., on 12 October 1995 in Superior Court, Buncombe County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments for attempted first-degree murder, assault with a deadly weapon with intent to kill, and discharging a firearm into occupied property was allowed 27 November 1996. Heard in the Supreme Court 12 May 1997.

*Michael F. Easley, Attorney General, by Jill Ledford Cheek, Assistant Attorney General, for the State.*

*Harry C. Martin, J. Matthew Martin, and John A. Martin for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant, Ernest Garland Allen, was indicted on 6 March 1995 for the first-degree murder of Kathy Allen, attempted first-degree murder of Gerald Ross Freeman, assault with a deadly weapon with the intent to kill inflicting serious injury against Gerald Ross Freeman, and discharging a firearm into occupied property. Defendant was tried capitally at the 2 October 1995 session of Superior Court, Buncombe County, and was found guilty of first-degree murder under the felony murder rule, attempted first-degree murder, assault with a deadly weapon with intent to kill, and discharging a firearm into occupied property. After a separate capital sentencing proceeding, the jury was unable to reach unanimous agreement as to a recommendation for punishment. The trial court therefore imposed a sentence of life imprisonment as required by law. In addition, the trial court sentenced defendant to a minimum of 238 months and a maximum of 295 months for attempted first-degree murder. The trial court arrested judgment on the assault with a deadly weapon with intent to kill conviction and merged the conviction of discharging a firearm into occupied property with the felony murder conviction.

The State's evidence tended to show *inter alia* that on 23 January 1995, defendant shot and killed his wife, Kathy Allen, and attempted

to kill Gerald Ross Freeman, while the two victims sat alone in a parked car. The victims worked at Charles D. Owen Manufacturing, where they had worked together for a number of years. Mrs. Allen had separated from defendant in November of 1994.

On the morning of the murder, Mrs. Allen met Ross Freeman in the parking lot of their employer. Mrs. Allen was not working on this morning due to injuries she had sustained when defendant shot her six times on Thanksgiving Day of 1994. The two victims sat alone in Freeman's car, which was parked between a pickup truck and Mrs. Allen's car. At some point, Freeman looked up and saw defendant "l[y]ing about halfway across the hood of that [pickup] truck," pointing the barrel of a shotgun at him. Defendant fired the shotgun, striking Freeman in the neck and throat and killing Kathy Allen. Freeman then jumped out of the car and ran to the guard house to call for help. After viewing the body of his dead wife, defendant left the scene and was not apprehended until later that evening in another county.

By his first assignment of error, defendant contends that the sentence of life imprisonment without parole, pursuant to N.C.G.S. § 14-17, violates the North Carolina Constitution. Specifically, defendant argues that life imprisonment without parole violates the Separation of Powers Clause, is unrecognized by the North Carolina Constitution, violates the Due Process and Law of the Land Clauses of the federal and state Constitutions, and violates North Carolina's constitutional prohibition against cruel and unusual punishment. We disagree.

[1] First, defendant argues that life imprisonment without parole is unconstitutional because it violates Article I, Section 6 of the North Carolina Constitution, the Separation of Powers Clause. Defendant contends that this sentence infringes on the power of the Executive Branch, specifically the Governor's power to parole. Defendant argues that the power to parole has historically been a right of the Executive Branch of government. Since the present North Carolina Constitution does not continue to specifically divest the Governor of this power, defendant argues that the legislature may not pass a statute such as N.C.G.S. § 14-17 that infringes on this right of the Executive Branch.

Prior to 1953, the Governor's power to parole had been recognized by the General Assembly when it passed legislation allowing the Governor to appoint a Board of Paroles. See N.C.G.S. § 148-52 (1935) (amended 1953). In 1953, amendments to the North Carolina

Constitution were adopted which divested the Governor of the power to parole and specifically vested this right in the legislature. Article III, Section 6, thus amended, provided:

> **Reprieves, commutations, and pardons.**—The governor shall have the power to grant reprieves, commutations and pardons, after conviction, for all offenses (except in cases of impeachment), upon such conditions as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons. . . . *The terms reprieves, commutations and pardons shall not include paroles.* The General Assembly is authorized and empowered to create a Board of Paroles, provide for the appointment of the members thereof, and enact suitable laws defining the duties and authority of such Board to grant, revoke and terminate paroles. *The Governor's power of paroles shall continue until July 1, 1955, at which time said power shall cease and shall be vested in such Board of Paroles as may be created by the General Assembly.*

N.C. Const. of 1868, art. III, § 6 (1953) (emphasis added).

Defendant relies on the fact that the present North Carolina Constitution no longer contains the language that divests the Governor of the power to parole. However, the present Constitution does explicitly state that the Governor's power to affect the sentence of a defendant does not include the ability to parole. Article III, Section 5(6) provides the following:

> *Clemency.* The Governor may grant reprieves, commutations, and pardons, after conviction, for all offenses (except in cases of impeachment), upon such conditions as he may think proper, subject to regulations prescribed by law relative to the manner of applying for pardons. *The terms reprieves, commutations, and pardons shall not include paroles.*

N.C. Const. art. III, § 5(6) (emphasis added). Therefore, we conclude that the Governor does not possess the constitutional power to parole.

[2] Defendant also contends that N.C.G.S. § 15A-1380.5 infringes upon the clemency power of the Governor. This statute allows defendants sentenced to life imprisonment without parole the right to have their cases reviewed by a superior court judge after twenty-five years of imprisonment. The statute further provides that after the twenty-five year period, the "defendant's sentence shall be reviewed

every two years as provided by this section, unless the sentence is altered or commuted before that time." N.C.G.S. § 15A-1380.5(b) (Supp. 1996). Defendant's contention that this statute seeks to limit the clemency power of the Governor is incorrect. This statute allows a defendant not already benefited by the merciful hand of the Governor to have his case reviewed by a superior court judge; it increases a defendant's chance of parole but does not affect the Governor's clemency power in any way.

After reviewing each of the statutes questioned by defendant, we conclude that they do not violate the Separation of Powers Clause.

[3] Defendant next argues that life imprisonment without parole is a type of punishment not recognized by our state Constitution because the term "life imprisonment without parole" is not found in Article XI, Section 1 (punishments, corrections, and charities), which provides:

> The following punishments only shall be known to the laws of this State: death, imprisonment, fines, suspension of jail or prison term with or without conditions, restitutions, community service, restraints on liberty, work programs, removal from office, and disqualification to hold and enjoy any office of honor, trust, or profit under this State.

N.C. Const. art. XI, § 1 (amended 1996). In this case, defendant was convicted of, among other things, first-degree murder, which is punishable by death or life imprisonment without parole. See N.C.G.S. § 14-17 (Supp. 1996) (effective 1 October 1994). Defendant received the prescribed sentence of imprisonment for life without parole. This Court has already settled that the General Assembly alone prescribes the maximum and minimum punishment which can be imposed on those convicted of crimes. State v. Perry, 316 N.C. 87, 101, 340 S.E.2d 450, 459 (1986). We conclude that the term "life imprisonment without parole" falls within the meaning of the constitutional term "imprisonment," so the sentence was authorized by the Constitution.

[4] Defendant also contends that the statutory scheme established by the legislature and employed by the trial court to determine his sentence is flawed because it violates the Due Process and the Law of the Land Clauses of the federal and state constitutions. N.C.G.S. § 14-17 provides that any person who commits specific types of first-degree murder "shall be punished with death or imprisonment in the State's prison for life without parole as the court shall determine pursuant to G.S. 15A-2000." Defendant argues that N.C.G.S. § 15A-2000

provides that defendant can receive life imprisonment instead of life imprisonment without parole. Specifically, 15A-2000(b) does not include the language "life without parole" but only uses "life imprisonment." It provides:

> If the jury cannot, within a reasonable time, unanimously agree to its sentence recommendation, the judge shall impose a sentence of life imprisonment; provided, however, that the judge shall in no instance impose the death penalty when the jury cannot agree unanimously to its sentence recommendation.

N.C.G.S. § 15A-2000(b) (Supp. 1996). Because defendant's jury was not unanimous in its sentencing decision, defendant argues the trial court is bound by the language in 15A-2000(b) and should not have sentenced him to life imprisonment without parole, but only to life imprisonment.

Under N.C.G.S. § 14-17, the only two possible punishments provided in the statute are death and life imprisonment without parole. See N.C.G.S. § 14-17. The purpose of N.C.G.S. § 15A-2000 is to supply the procedural guidelines for the sentencing proceeding. This section prevents a defendant from receiving a sentence of death when the jury cannot unanimously agree on that punishment. N.C.G.S. § 15A-2002 clearly reads that "[t]he judge shall instruct the jury, in words substantially equivalent to those of this section, that a sentence of life imprisonment means a sentence of life without parole." Through this section, the legislature defines the meaning of life imprisonment as life without parole and clears up any ambiguity that might surround the term. The sentencing scheme under which defendant was convicted does not violate the Due Process or Law of the Land Clause embodied in the United States Constitution or the North Carolina Constitution.

[5] Finally, defendant contends that his sentence of life imprisonment without the possibility of parole violates North Carolina's constitutional prohibition against cruel and unusual punishment. Defendant argues that his sentence is not cruel, but rather that his sentence is unusual because it does not allow for him to be paroled and inhibits clemency.

We have already shown that defendant's sentence and applicable statutes do not restrict the Governor's clemency power. Furthermore, defendant cites no authority showing that his sentence is unusual under North Carolina law.

For the foregoing reasons, we conclude that the sentence of life imprisonment without parole does not violate the North Carolina Constitution.

**[6]** By another assignment of error, defendant contends that the trial court erred in denying his motion to dismiss the charge of discharging a firearm into occupied property, Freeman's vehicle, and the charge of felony murder based on the felony of discharging a firearm into occupied property. Defendant argues that the State failed to show that the firearm was discharged from outside the vehicle and therefore failed to establish a required element of the crime. We disagree.

When considering a motion to dismiss for insufficiency of the evidence, the court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence. *State v. Hood*, 332 N.C. 611, 621, 422 S.E.2d 679, 684 (1992), *cert. denied*, 507 U.S. 1055, 123 L. Ed. 2d 659 (1993). The court must also consider whether all the elements of the crime are supported by substantial evidence. *Id.* "Substantial evidence" is relevant evidence that a reasonable mind might accept as sufficient to support a conclusion. *State v. Porter*, 303 N.C. 680, 685, 281 S.E.2d 377, 381 (1981). Discharging a firearm into an occupied vehicle is the willful or wanton discharging of a firearm into any vehicle while it is occupied. N.C.G.S. § 14-34.1 (1995); *State v. Bray*, 321 N.C. 663, 670, 365 S.E.2d 571, 575 (1988); *State v. Mancuso*, 321 N.C. 464, 468, 364 S.E.2d 359, 362 (1988). In *Mancuso*, this Court held that even though defendant, while remaining outside the vehicle, placed the firearm inside the vehicle when discharging it, the firearm was discharged "into" the vehicle within the meaning of N.C.G.S. § 14-34.1. 321 N.C. at 468, 364 S.E.2d at 362.

In this case, the State's evidence tended to show that the victims, Kathy Allen and Ross Freeman, were sitting alone in Freeman's car in the parking lot where they worked. Defendant appeared outside the car in which the victims were sitting and remained there, firing the shots that killed Mrs. Allen and wounded Freeman. Direct testimony by Freeman, the attempted murder victim, described defendant before the shooting as "laying about halfway across the hood" of a truck that was parked next to Freeman's vehicle. We conclude that this is substantial evidence requiring that the trial court submit to the jury the charges of discharging a firearm into occupied property and felony murder based on that charge. This assignment of error is overruled.

**[7]** By another assignment of error, defendant contends that the trial court erred in admitting evidence of a prior assault on the murder victim. Defendant concedes that such evidence can be elicited through Rule 404(b) of the North Carolina Rules of Evidence to prove intent; however, he contends that the trial court failed to limit the jury's consideration of this prior assault to the theory for which it might offer support. The State submitted three different theories of murder: felony murder, premeditated and deliberate murder, and murder by lying in wait. Defendant maintains that of these three theories, only one, premeditated and deliberate murder, has the element of intent.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith"; nevertheless, it may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C.G.S. § 8C-1, Rule 404(b) (1992). Furthermore, in cases where a husband is accused of killing his wife, the State may introduce evidence that encompasses his married life in order to prove malice, intent, and ill will toward the victim. *State v. Syriani*, 333 N.C. 350, 377, 428 S.E.2d 118, 132, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993). We conclude that, in this case, the prior assault on the victim is relevant to show defendant's "intent" to kill his wife. Therefore, this evidence was properly admitted by the trial court.

**[8]** Next, we turn to defendant's argument that the trial court erred in not giving a limiting instruction as to the evidence of the prior assault. Defendant did not raise this issue at trial, and he did not "specifically and distinctly" assign plain error in the record on appeal as required by Rule 10(c)(4) of the Rules of Appellate Procedure. Therefore, this assignment of error is not properly before this Court and is overruled.

**[9]** By another assignment of error, defendant contends that the trial court erred in instructing the jury on the issue of flight. Defendant admits he left the scene of the crime, but he argues that as a matter of law his departure from the scene was not enough evidence from which to conclude that he fled. Therefore, he maintains that it was improper for the trial court to instruct the jury that it could consider defendant's leaving the scene as an indication of guilt. We disagree.

Because defendant did not object to the jury instructions at trial, we review only for plain error. *State v. Odom*, 307 N.C. 655, 300

S.E.2d 375 (1983); N.C. R. App. P. 10(c)(4). In the present case, defendant shot and killed his wife, Kathy Allen, and wounded Ross Freeman while they sat in a parked car. Defendant then drove away from the scene of the crime and was not apprehended until later that night in another county. This Court has held that jury instructions relating to the issue of flight are proper as long as there is "some evidence in the record reasonably supporting the theory that the defendant fled after the commission of the crime charged." *State v. Fisher*, 336 N.C. 684, 706, 445 S.E.2d 866, 878 (1994), *cert. denied*, 513 U.S. 1098, 130 L. Ed. 2d 665 (1995); *see also State v. Tucker*, 329 N.C. 709, 722, 407 S.E.2d 805, 813 (1991). In reviewing the evidence in the present case, we conclude that the trial court had sufficient evidence from which to conclude that defendant had fled the scene of the crime and, therefore, properly instructed the jury on the issue of flight. This assignment of error is overruled.

For the foregoing reasons, we conclude that defendant received a fair trial, free of prejudicial error.

NO ERROR.