IN THE CASE OF


UNITED STATES, Appellee

v.

Frank J. RONGHI, Staff Sergeant
U.S. Army, Appellant

No. 03-0520

Crim. App. No. 20000635

United States Court of Appeals for the Armed Forces

Argued February 11, 2004

Decided June 30, 2004

*GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., EFFRON, BAKER, and ERDMANN, JJ., joined.*

Counsel

For Appellant:  Captain Eilin J. Chiang (argued); Colonel Robert
D. Teetsel, Lieutenant Colonel Mark Tellitocci, and Major
Allyson G. Lambert (on brief); Captain Terri J. Erisman.

For Appellee:  Captain Mark A. Visger (argued); Colonel Lauren
B. Leeker, Lieutenant Colonel Margaret B. Baines, and Captain
Charles C. Choi (on brief).

Military Judge:  Kenneth H. Clevenger


**This opinion is subject to editorial correction before final publication**.

Judge GIERKE delivered the opinion of the Court.

Congress passed a bill authorizing the court-martial punishment of confinement for life without eligibility for parole (LWOP) on November 6, 1997.[1] The President signed that bill into law on November 18, 1997.[2] However, the President did not amend the Manual for Courts-Martial to incorporate LWOP until April 11, 2002.[3] The issue in this case is whether LWOP was an authorized court-martial punishment for the crime of premeditated murder during the period between enactment of the LWOP statute and the Manual's revision. We conclude that the statute creating LWOP authorized that punishment for premeditated murder offenses committed after November 18, 1997.

## Background

Appellant was deployed with the 82d Airborne Division in Kosovo on January 13, 2000, when he committed the crimes that resulted in his sentence to LWOP. As aptly described by the government, Appellant "took advantage of the trust, respect, and kindness" that eleven-year-old Merita Shabiu showed to American soldiers. "Appellant led her to a dark and deserted, filthy,

---

[1] National Defense Authorization Act for Fiscal Year 1998, Pub. L. No. 105-85, § 581, 111 Stat. 1629, 1759 (1997) (codified at 10 U.S.C. § 856a (2000)).

[2] Signing Statement, 33 Weekly Comp. Pres. Doc. 1861 (Nov. 18, 1997), reprinted in 1997 U.S.C.C.A.N. 2707.

[3] Exec. Order No. 13,262, 67 Fed. Reg. 18,773 (April 17, 2002).

trash-strewn basement where he indecently assaulted, forcibly anally sodomized, and murdered with premeditation, this innocent child victim."

As a result of these brutal acts, Appellant pled guilty to and was found guilty of premeditated murder, indecent acts with a child under 16 years of age, and forcible sodomy of a child under 16 years of age, in violation of Articles 118, 134, and 125 of the Uniform Code of Military Justice (UCMJ). 10 U.S.C. §§ 918, 934, 925 (2000). Appellant agreed to plead guilty under a pretrial agreement that provided for a non-capital referral.

At trial, both the defense counsel and Appellant personally agreed that the maximum authorized punishment included LWOP. On August 1, 2000, a court-martial panel of officer members sentenced Appellant to LWOP, a dishonorable discharge, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged, and the Army Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.[4] We granted review to determine whether LWOP was an authorized court-martial punishment for the crime of premeditated murder on the date of Appellant's offenses.[5]

---

[4] United States v.Ronghi, No. ARMY 20000635 (A. Ct. Crim. App. May 27, 2003).

[5] See United States v. Ronghi, 59 M.J. 167 (C.A.A.F. 2003) (order granting review).

Discussion

"It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." United States v. Pritt, 54 M.J. 47, 50 (C.A.A.F. 2000) (quoting Gozlon-Peretz v. United States, 498 U.S. 395, 404 (1991)). An examination of the applicable statutes reveals that Congress authorized LWOP as a sentence for any premeditated murder committed from the day after its enactment forward.

## Article 56a Authorized LWOP for Premeditated Murder Offenses Committed Starting the Day After Its Enactment

Article 56a(a) of the UCMJ provides, "For any offense for which a sentence of confinement for life may be adjudged, a court-martial may adjudge a sentence of confinement for life without eligibility for parole." 10 U.S.C. § 856a(a) (2000). The statute that added this language to the UCMJ also provided that Article 56a "shall be applicable only with respect to an offense committed after the date of the enactment of this Act." Pub. L. No. 105-85, § 581(b), 111 Stat. at 1759. That date of enactment was November 18, 1997, when the President signed it into law.

When Congress adopted Article 118, it provided only two authorized sentences for the offenses of premeditated murder and felony murder: "death or imprisonment for life." Art. 118, UCMJ; 10 U.S.C. § 918 (2000). When it adopted Article 56a, Congress plainly intended to authorize LWOP as a third available

4

sentence for a premeditated murder that occurred after November 18, 1997.  Thus, absent some other statutory provision limiting LWOP's availability, it was an authorized sentence when Appellant committed his offenses on January 13, 2000.

The 2000 Manual for Courts-Martial
Did Not Conflict with the LWOP Statute

For most of the UCMJ's punitive articles, the President plays a role in determining the maximum authorized punishment. Article 56 provides, "The punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense."  Art. 56, UCMJ, 10 U.S.C. § 856 (2000).  Article 18 similarly authorizes the President to prescribe "limitations" on the punishments adjudged by general courts-martial.  Art. 18, UCMJ, 10 U.S.C. § 818 (2000).  The Supreme Court has upheld the constitutionality of this general delegation of Congress's "authority to define criminal punishments" for military offenses.  Loving v. United States, 517 U.S. 748, 768 (1996).  The President has executed this delegated authority by establishing maximum punishments in Part IV of the Manual for Courts-Martial.

The 2000 edition of the Manual for Courts-Martial, which governed Appellant's case,[6] provided that the maximum punishment

---

[6] The 2000 Manual incorporated the National Defense Authorization Act for Fiscal Year 2000's UCMJ amendments and Executive Order 13,140's amendments to the Manual.  2000 Manual at Preface.  The National Defense Authorization Act for Fiscal Year 2000, which

5

for premeditated murder was "death."  Manual for Courts-Martial, United States, Pt. IV, para. 43.e(1) (2000 ed.) [hereinafter 2000 Manual].  The same Manual provision noted that the mandatory minimum punishment for premeditated murder was "imprisonment for life."  Id.  Because LWOP is a lesser punishment than the maximum (death), the Manual's maximum sentence provision did not conflict with the congressionally-authorized sentence of LWOP in a premeditated murder case.

Additionally, the 2002 executive order that amended the Manual for Courts-Martial to incorporate LWOP indicated that the punishment "shall only apply to offenses committed after November 18, 1997."  Exec. Order 13,262 § 6.b, 67 Fed. Reg. 18,773, 18,779 (April 11, 2002).  Thus, the executive order itself recognized LWOP's availability as an authorized sentence at the time of Appellant's offenses.

Another presidential limitation on court-martial sentencing authority is Rule for Courts-Martial (R.C.M.) 1003, which provides an exclusive list of the kinds of punishments that a court-martial may impose.  The 2000 Manual's version of R.C.M. 1003 did not specifically mention LWOP.  Rather, the 2000

---

is not relevant to this appeal, was enacted on October 5, 1999. Pub. L. No. 106-65, 113 Stat. 512 (1999).  Executive Order 13,140 was signed on October 6, 1999, and generally took effect on November 1, 1999.  See Exec. Order 13,140 § 4, 64 Fed. Reg. 55,115, 55,120 (Oct. 12, 1999).

Manual's version of R.C.M. 1003, like its predecessors, authorized "confinement" as a form of punishment without addressing the term of confinement at all.  But R.C.M. 1003 nevertheless allowed LWOP, because it is not a new <u>form</u> of punishment, but simply a longer <u>term</u> of confinement than military law had previously allowed a court-martial to adjudge.[7]

In <u>State v. Allen</u>, 488 S.E.2d 188 (N.C. 1997), the North Carolina Supreme Court faced a similar issue.  Under North Carolina law, premeditated murder is punishable by only death or life imprisonment without parole.  N.C. Gen. Stat. § 14-17 (2003).  The North Carolina Constitution provides:

> The following punishments only shall be known to the laws of this State:  death, imprisonment, fines, suspension of jail or prison term with or without conditions, restitutions, community service, restraints on liberty, work programs, removal from office, and disqualification to hold and enjoy any office of honor, trust, or profit under this State.

N.C. Const. art. XI, § 1.  One issue in <u>Allen</u> was whether the North Carolina legislature was authorized to create the punishment of LWOP, which Article XI did not expressly mention.  The North Carolina Supreme Court held that it was, reasoning that "the term 'life imprisonment without parole' falls within the meaning of the constitutional term 'imprisonment,' so the

---

[7] See <u>Schick v. Reed</u>, 419 U.S. 256, 269 (1974) (Marshall, J., dissenting) ("Confinement without possibility of parole is unknown to military law; it is not and never has been authorized for any UCMJ offense." (footnote and citations omitted)).

sentence was authorized by the Constitution." Allen, 488 S.E.2d at 737. We find Allen persuasive. Applying the North Carolina Supreme Court's reasoning to the military justice system supports the conclusion that "confinement for life without eligibility for parole" falls within the meaning of R.C.M. 1003(b)(7)'s term "confinement."

We hold that LWOP was an authorized punishment for Appellant's offenses. To resolve the present case, we need not, and do not, address the availability of LWOP for any other offense.

CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed.