**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman First Class NICHOLAS E. BUSCH**
**United States Air Force**

**ACM 38530**

**11 February 2015**

Sentence adjudged 18 November 2013 by GCM convened at Sheppard Air Force Base, Texas. Military Judge: Matthew S. Ward (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 6 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Major Nicholas D. Carter and Major Luke D. Wilson.

Appellate Counsel for the United States: Major Mary Ellen Payne and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Air Force Rule of Practice and Procedure 18.4.

TELLER, Judge:

The appellant was convicted, in accordance with his pleas, by a military judge sitting alone, of sexual abuse of a child under the age of 16, false official statement, fraudulent enlistment, and absence without leave, in violation of Articles 120,[1] 107, 83,

---

[1] The charged events under Article 120, UCMJ, 10 U.S.C. § 920, took place between on or about 1 February 2013 and 20 May 2013, meaning the appellant was charged and convicted under the current version of Article 120, UCMJ, which applies to offenses committed on or after 28 June 2012. *See Manual for Courts-Martial, United States*, Part IV, ¶ 45 (2012 ed.).

and 86, UCMJ, 10 U.S.C. §§ 920, 907, 883, 886. The adjudged and approved sentence included a dishonorable discharge, 6 years' confinement, forfeiture of all pay and allowances, and reduction to E-1.

The appellant argues: (1) his plea to absence without leave was improvident because the military judge failed to resolve whether the appellant's completion of out-processing based on a fraudulent document conferred authority for his absence or raised the defense of justification and (2) the military judge erred in computing the maximum sentence for sexual abuse of a child through electronic means. Finding no error that materially prejudices a substantial right of the appellant, we affirm the findings and sentence.

*Background*

The charges in this case arose out of a relationship between the appellant and a 15-year-old high school student from Florida he never met in person. While attending basic military training in Texas, the 19-year-old appellant began exchanging letters with the girl (who was an acquaintance of a fellow trainee). In March 2013, after basic training, the appellant and the girl began to communicate through text messages and video chat. The messages later became overtly sexual in nature, including the exchange of nude photos[2] and mutual masturbation sessions over video chat.[3] The girl's father discovered the relationship and confronted the appellant and his daughter, telling them to stop contacting each other. During that conversation, the appellant confirmed that he knew the girl was only 15 years old. The girl's father confiscated her electronic devices, and the relationship soon ended.

This misconduct came to light in May 2013 as the appellant was nearing the completion of technical training at Sheppard Air Force Base (AFB). The girl's father reported the sexually explicit communications first to civilian law enforcement and then to the Air Force Office of Special Investigations (AFOSI). AFOSI contacted the appellant's unit to have the appellant's impending departure for his follow-on assignment placed on hold pending the outcome of the investigation. AFOSI interviewed the appellant on 6 June 2013 regarding his communications with the girl. During the investigation, it was discovered the appellant had previously been adjudicated[4] to have committed two offenses of indecent liberties with a child prior to entry into the Air Force.

---

[2] The Government conceded none of the photographs constituted child pornography, so no charges were filed based on the exchange of photographs.

[3] The appellant was convicted of sexual abuse of a child by committing a lewd act (exposing his genitalia) using communication technology while the girl watched.

[4] The appellant's former Juvenile Field Services Intensive Supervision Officer testified that an "adjudication" was the equivalent of a conviction in the Kansas juvenile misconduct system. That characterization was never contested at trial.

The appellant had not disclosed these offenses in his enlistment application, and they were not discovered in his pre-enlistment background check.

Although the appellant had already received orders for his follow-on assignment and had graduated from technical training, both his flight chief and first sergeant told him he was not authorized to depart Sheppard AFB. Frustrated by this news, the appellant forged his military training leader's signature and stamp on his relocation clearance letter, which he then used to certify to the out-processing section that he had completed all requirements for out-processing.

On 7 August 2013, the appellant completed out-processing with the military personnel section and departed Sheppard AFB. Rather than proceeding to his next duty station, the appellant went to visit some childhood friends in Wichita, Kansas. On 9 August 2013, he was apprehended in Wichita by AFOSI.

*Providence of Guilty Plea to Absence without Authorization*

The appellant first contends his plea of guilty to the absence offense was improvident. He asserts the military judge failed to resolve the defense of justification, which was raised when the appellant stated in the guilty plea inquiry that he had completed out-processing. He alternatively argues his completion of out-processing raised a factual question of guilt which the military judge failed to resolve.

A military judge must determine whether an adequate basis in law and fact exists to support a guilty plea by establishing on the record that the "acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty." *United States v. Care*, 40 C.M.R. 247, 253 (C.M.A. 1969). Acceptance of a guilty plea is reviewed for an abuse of discretion, and questions of law arising from the plea are reviewed de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). We afford significant deference to the military judge's determination that a factual basis exists to support the plea. *Id.* (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002)); *see also United States v. Barton*, 60 M.J. 62 (C.A.A.F. 2004). Among the reasons for giving such discretion to military judges in accepting guilty pleas is the often undeveloped factual record in such cases as compared to that of a litigated trial. *Inabinette*, 66 M.J. at 322. Rejection of a guilty plea requires that the record show a substantial basis in law and fact for questioning the providence of the plea. *Id.*; *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

In this case, the question of whether the appellant had authority to leave is a question of fact, as one of the elements of the absence offense is that he was absent "without proper authority." Although the appellant now suggests for the first time on appeal that out-processing personnel had the authority to authorize his departure despite explicit direction to the contrary from his first sergeant, there is no factual basis for that argument in the record. On the contrary, the requirement that departing personnel

complete and submit a relocation clearance letter signed by a unit representative indicates that the out-processing section did not have independent authority to authorize departure and instead relied on the units to perform that function.

Furthermore, the military judge inquired during the colloquy whether the appellant believed he was authorized to leave, and the appellant plainly stated that he knew he was not:

> [Military Judge]: You had two people at the beginning of the day, one including your first sergeant, telling you were not authorized to leave?
>
> [Appellant]: Yes, sir.
>
> [Military Judge]: And then later in the day you had someone from, I guess, the out-processing station may have told you that you were clear to leave?
>
> [Appellant]: Yes, sir.
>
> [Military Judge]: So what's your view whether you were clear to leave or not?
>
> [Appellant]: I knew that I was not cleared to leave, and as I said before, I made a false -- I falsified a document stating that I was allowed to leave.
>
> [Military Judge]: Okay. So the people at the out-processing station had told you were clear to leave based on false information --
>
> [Appellant]: Yes, sir.
>
> [Military Judge]: -- that you had provided. Is that what you're saying?
>
> [Appellant]: Yes, sir.
>
> [Military Judge]: Did you know you provided them false information?
>
> [Appellant]: Yes, sir.
>
> [Military Judge]: Okay. So you didn't believe you were authorized to leave?

[Appellant]:  Yes, sir.

[Military Judge]:  Did you think you were authorized to out-process?

[Appellant]:  No, sir.

The military judge's determination, based on that discussion, that the appellant was not authorized to leave was not an abuse of discretion.

Nor do we find any basis for a defense of justification. The defense of justification is raised when facts are elicited that suggest the acts in question were performed pursuant to a legitimate military duty. *See United States v. Rockwood*, 52 M.J. 98, 112 (C.A.A.F. 1999); Rule for Courts-Martial (R.C.M.) 916(c). There are no such facts in this case. Although a statement from out-processing personnel that a member was authorized to depart might, if subjectively and reasonably believed, give rise to a mistake of fact defense, it does not give rise to a defense of justification, especially when knowingly obtained by false pretenses. The military judge is not required to inquire into and resolve the mere possibility of a defense. *United States v. Hayes*, 70 M.J. 454, 458 (C.A.A.F. 2012). The military judge had no duty, on these facts, to resolve any potential defense of justification.

We find the military judge had an adequate basis in law and fact to support the appellant's guilty plea. The military judge's findings were not an abuse of discretion, and we find no error of law that would support overturning the acceptance of the plea.

*Maximum Punishment*

The appellant argues that the military judge erred in determining the maximum punishment for one of the offenses of which he was convicted—sexual abuse of a child. He contends that, because the President had not yet established a maximum punishment for Article 120b(c), UCMJ, 10 U.S.C. § 920b(c), the maximum confinement for sexual abuse of a child was limited to 1 year, instead of the 15 years determined by the trial judge. He further argues that the President's change in the maximum sentencing provision is improperly being applied to him retroactively, in violation of the ex post facto clause. We disagree.

"The maximum punishment authorized for an offense is a question of law, which we review de novo." *United States v. Beaty*, 70 M.J. 39, 41 (C.A.A.F. 2011) (citing *United States v. Ronghi*, 60 M.J. 83, 84–85 (C.A.A.F. 2004); *United States v. Ingham*, 42 M.J. 218, 229–30 (C.A.A.F. 1995)).

The appellant was charged with sexual abuse of a child by committing a lewd act (exposing his genitalia using a communication device while she watched) on divers

occasions between 1 February 2013 and 20 May 2013, in violation of Article 120b(c), UCMJ (2012).[5]   Article 120b, UCMJ, was a new paragraph criminalizing "sexual offenses against children under the age of 16 which were previously contained in the 2007 version of Article 120" and took effect on 28 June 2012. *Manual for Courts-Martial* (*MCM*), app. 23 at A23-16.  This specific offense was not listed in Part IV of the *Manual* for purposes of determining limits on maximum punishment until the President issued an executive order on 15 May 2013, after the appellant's misconduct occurred but prior to his trial.[6]

On appeal, both parties agree that in such circumstances, the maximum punishment must be determined pursuant to R.C.M. 1003(c)(1)(B)(i), which is applicable to offenses not listed in Part IV of the *Manual*.  For those offenses, the maximum punishment depends on whether the offense is "included in or closely related to" a listed offense in the *Manual*.  R.C.M. 1003(c)(1)(B); *United States v. Finch*, 73 M.J. 144, 147 (C.A.A.F. 2014); *United States v. Beaty*, 70 M.J. 39, 42 n.7 (C.A.A.F. 2011).

The appellant argued his offense's language "mirrors" the offense of indecent exposure under the prior version of Article 120(n), UCMJ, 10 U.S,C § 920(n) (2007), and thus should share its maximum punishment of one year confinement.  The military judge disagreed, finding the offense was more closely related to the prior offense of indecent liberty with a child, Article 120(j), UCMJ, 10 U.S.C. § 920b(j) (2007), and therefore used a maximum sentence of 15 years' confinement for the offense.  Using this figure, the military judge calculated the appellant's overall maximum sentence to include 22 years' and one month confinement.

Although the appellant's asserted error is phrased as a violation of the ex post facto clause, the appellant's brief primarily argues the military judge erred in determining the appropriate "closely related" offense under R.C.M. 1003(c)(1)(B)(i).  Specifically, he argues that to be "closely related," the new specification must contain all the elements of the listed offense, citing *United States v. Beaty*, 70 M.J. at 42.  Since one of the elements of the prior offense of indecent liberties was that the act occur in the "physical presence" of the child, the appellant argues it cannot be a closely related offense to the 2012 offense.

---

[5] The appellant is convicted of "sexual abuse of a child" by committing a "lewd act upon [her]." Article 120b(c), UCMJ, 10 U.S.C. § 920b(c).  In pertinent part, "lewd act" is defined as "intentionally exposing [his] genitalia . . . to [the] child by . . . communication technology, with an intent to . . . arouse or gratify [his] sexual desire. Article 120b(h)(5), UCMJ, 10 U.S,C § 920b(h)(5).

[6]  On 15 May 2013, the President amended Paragraph 45 of Part IV of the *Manual for Courts-Martial* (*MCM*), establishing maximum punishments for offenses under Article 120, UCMJ, 10 U.S,C § 920.  *MCM*, Part IV, ¶ 45 (2012 ed.); Exec. Order No. 13643, 78 Fed. Reg. 29559 (May 15, 2013).  For sexual abuse of a child involving sexual contact under Article 120b(c), UCMJ, the maximum punishment includes 20 years' confinement and for cases not involving sexual contact, the maximum includes 15 years' confinement.  Exec. Order No. 13643, 78 Fed. Reg. 29559 (May 15, 2013).

We find the citation to *Beaty* in this instance inapposite. In *Beaty*, the pertinent offense was not "included in or closely related to" an offense listed in the *Manual*, and therefore R.C.M. 1003(c)(1)(B)(ii) governed the maximum punishment, not R.C.M. 1003(c)(1)(B)(i). *Beaty*, 70 M.J. at 42. This provision provides that the unlisted offense "is punishable as authorized by the United States Code." *Id.* In those circumstances, our superior court has found no error in importing the maximum punishment from a "directly analogous federal statute . . . when every element of the federal crime, except the jurisdictional element, was included in the [UCMJ] specification." *Id.* at 43, citing *United States v. Leonard*, 64 M.J. 381, 384 (C.A.A.F. 2007); *United States v. Finch*, 73 M.J. 144, 148 (C.A.A.F. 2014) (stating that the maximum punishment can be based on analogous portions of the United States Code which address "essentially the same offenses" as UCMJ specifications).

Although an element comparison is a logical starting point, we find that the lack of identical elements is not dispositive when evaluating offenses *within* Part IV of the *Manual* under R.C.M. 1003(c)(1)(B)(i). First, if every element of the new unlisted UCMJ specification is found in an offense listed in Part IV, the new UCMJ specification would be "included in" that Part IV offense, and its maximum would apply. *See* R.C.M 1003(c)(1)(B)(i). Second, the words "closely-related" are used in R.C.M. 1003(c)(1)(B)(i) but not in R.C.M. 1003(c)(1)(B)(ii), evincing an intent that these two parts of the rule be evaluated and applied differently when comparing offenses. Furthermore, the use of this language in R.C.M. 1003(c)(1)(B)(i) clearly means that the listed and unlisted offenses do not need to be identical or have identical elements.

We therefore find there is no requirement that the alleged misconduct be punishable as a violation of the applicable closely related offense. There is precedent for this conclusion. For example, in the Article 134, UCMJ, 10 U.S.C. § 934, context, our superior court applied the maximum punishment for the offense of bigamy even though the appellant could not have been convicted of that offense because he was unmarried when he entered into a marriage with a woman whose own divorce was not final. *United States v. Bivins*, 49 M.J. 328, 332 (C.A.A.F. 1998). Nonetheless, the court upheld the conviction under the general Article 134 and then applied the maximum punishment for bigamy "because this is the punishment authorized for the most closely-related offense to appellant's misconduct." *Id.*; *see also United States v. Kyle*, 32 M.J. 724, 727 (A.F. Ct. Crim. App. 1993) (stating that if the offense is included in or closely related to a listed offense, the maximum punishment for the listed offense applies "even though the two crimes are not the same"). *But see United States v. Tenney*, 60 M.J. 838, 843 (N.M. Ct. Crim. App. 2005) (finding a listed offense is not closely related if the appellant's conduct did not violate that offense).[7]

---

[7] In another context, appellate courts have considered whether offenses are "closely related" for purposes of "uphold[ing] a conviction when the providence inquiry clearly establishes guilt of an offense different from but closely related to the crime to which the accused has pleaded guilty." *United States v. Wright*, 22 M.J. 25, 27

We believe the better approach to applying R.C.M. 1003(c)(1)(B)(i) in these circumstances is articulated in *United States v. Ramsey*, 40 M.J. 71 (C.A.A.F. 1994). There, in deciding what offense was closely related to the appellant's crime, the court focused on the "social cost" of the appellant's misconduct rather than the presence or absence of any particular element. *See id*. at 75. Applying the *Ramsey* approach, we find indecent liberty with a child is more closely related to the appellant's misconduct than indecent exposure or indecent acts.[8] As the military judge indicated, the predominant social cost inflicted by the appellant was not a public display of indecency, but rather the wrongful involvement of a child in the appellant's indecent conduct.[9] Accordingly, the appropriate maximum punishment for the appellant's misconduct under R.C.M. 1003(c)(1)(B)(i) was that listed for indecent liberties with a child for offenses committed between 1 October 2007 and 27 June 2012: a dishonorable discharge, 15 years' confinement, and forfeiture of all pay and allowances.

We furthermore find unconvincing the appellant's argument that the military judge's determination of the maximum punishment constituted a violation of the ex post facto clause. Although the military judge noted the President had set the maximum confinement for the new offense at 15 years, his discussion with counsel focused on trial defense counsel's argument that the punishment should be determined by comparison to the offense of indecent exposure. The military judge's decision was based on his conclusion that a closely related offense existed, which is the standard under R.C.M. 1003(c)(1)(B)(i). Because he did not base his decision on Executive Order 13643, the ex post facto clause is not implicated. Furthermore, as discussed above, because the military judge did not err in determining the maximum confinement for this offense, the application of Executive Order 13643 would not have increased the punishment and thus would not have violated the ex post facto clause in any event. We

---

(C.M.A. 1986). Through this doctrine, different offenses were found to be "closely related" even though they require proof of different elements, or were completely different statutory offenses. *United States v. Felty*, 12 M.J. 438, 440 (C.M.A. 1982); *United States v. Graves*, 20 M.J. 344, 346 (C.M.A. 1985); *United States v. Epps*, 25 M.J. 319, 323 (C.M.A. 1987). Our superior court recently found that the use of this doctrine to affirm a guilty plea to an offense to which the accused has not pled guilty and which is not a lesser included offense is "inconsistent with traditional due process notions of fair notice." *United States v. Morton*, 69 M.J. 12, 16 (C.A.A.F. 2010). We find this holding does not apply to evaluating offenses under R.C.M. 1003(c)(1)(B)(i) because, unlike the doctrine created by this line of cases, that evaluation under R.C.M. 1003 is based on language within the *Manual* reflecting the President's use of his congressionally-delegated authority in Article 56, UCMJ, to establish limits on punishments based on whether the offenses are "listed" or "not listed" in Part IV of the *Manual*.

[8] At the time of the appellant's misconduct, there were three offenses in Part IV of the *Manual* that could be considered closely related offenses: indecent liberty, indecent act, and indecent exposure, which have maximum punishments of 15 years, 5 years, and 1 year, respectively. Article 120(j), 120(k), 120(n), 120(t)(11), 120(t)(12), UCMJ, 10 U.S.C. §§ 920(j), 920(k), 920(n), 920(t)(11), 920(t)(12).

[9] The analysis of the 2012 changes to Article 120b, UCMJ, 10 U.S.C. § 920b, in the *Manual* states "the definition[] of . . . lewd acts [has] been broadened to cover all sexual offenses . . . covered under the 2007 version [including] Article 120(j) [indecent liberty] to include . . . committing indecent conduct with or in the presence of a child. [It] now include[s] offenses committed via any communication technology to encompass offenses committed via the internet (such as exposing oneself to a child by using a webcam), cell phones, and other modern forms of communication. This change expands the pre-2012 definition of 'indecent liberty' which proscribed conduct only if committed in the physical presence of a child." *MCM*, app. 23 at A23-16.

find the appellant's ex post facto argument (citing to *Lindsey v. Washington*, 301 U.S. 397 (1937)) inapposite.

Lastly, even if the military judge erred in advising the appellant about the maximum sentence he faced for his course of misconduct, we find such advice did not materially prejudice the substantial rights of the appellant.

If the appellant's crime is not closely related to indecent liberty because of its additional element, then it is closely related to indecent acts which can occur outside the physical presence of the child. *See United States v. Miller*, 67 M.J. 87, 89 (C.A.A.F. 2008). That offense had a maximum sentence that included 5 years' confinement (as well as a dishonorable discharge), thus the appellant's maximum confinement would have been 12 instead of 22 years. Given the facts of the case, we find this change in the maximum sentence would not have affected the sentence adjudged by the military judge or that approved by the convening authority.

Furthermore, we do not find this advice rendered the appellant's guilty plea improvident. A plea of guilty can be improvident if it is based on a "substantial misunderstanding on the accused's part of the maximum punishment" he faced, but we do not use a "mathematical formula" to determine what amounts to a "substantial" misunderstanding. *United States v. Mincey*, 42 M.J. 376, 378 (C.A.A.F. 1995). Instead, we consider "all the circumstances of the case . . . to determine whether the misapprehension of the maximum sentence affected the guilty plea, or whether that factor was insubstantial in [appellant's] decision to plead" guilty. *Id.*

Here, the appellant has not alleged that any misunderstanding as to the maximum sentence was a substantial factor in his decision to plead guilty. In fact, he chose to plead guilty without a pretrial agreement when he believed he could receive 22 years' confinement for his offenses. In light of that, we are confident the appellant would still have pled guilty before a military judge even if he had been informed that the maximum sentence was 12 years. Also, we note the overwhelming evidence of guilt reflected in the record (which included a confession by the appellant to the sexual conduct with the child and text messages between the two) which dictated it would be in the appellant's best interest to accept responsibility for his offenses through a guilty plea. Additionally, he received an adjudged sentence well below the maximum punishment of 12 years. In light of this, we are confident that the appellant would still have pled guilty even if he was informed that the maximum sentence he faced was 12 years.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the approved findings and sentence are **AFFIRMED**.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court