UNITED STATES, Appellee

v.

David P. CHRISTIAN, Staff Sergeant
U.S. Army, Appellant

No. 04-0797

Crim. App. No. 20011021

United States Court of Appeals for the Armed Forces

Argued October 12, 2005

Decided May 31, 2006

GIERKE, C.J., delivered the opinion of the Court, in which
CRAWFORD, EFFRON, BAKER, and ERDMANN, JJ., joined.

Counsel

For Appellant:  Captain Julie A. Caruso (argued); Colonel Mark
Cremin, Lieutenant Colonel Mark Tellitocci, Major Sean S. Park,
and Captain Michael L. Kanabrocki (on brief); Colonel John T.
Phelps II and Major Allyson G. Lambert.

For Appellee:  Captain Larry W. Downend (argued); Colonel Steven
T. Salata, Lieutenant Colonel Theresa A. Gallagher, and Major
William J. Nelson (on brief).


Military Judge:  Patrick J. Parrish

**This opinion is subject to revision before final publication.**

Chief Judge GIERKE delivered the opinion of the Court.

This Court has granted review of two issues.[1] The first issue for our consideration is whether life without eligibility for parole (LWOP) was an authorized punishment at the time Appellant committed the offense of forcible sodomy of a child under twelve years of age. We hold that LWOP was an authorized sentence and conclude that Appellant's guilty plea was provident.

The second issue is whether Appellant received ineffective assistance of counsel because his trial defense counsel failed to advocate for confinement credit for Appellant's alleged illegal pretrial punishment and restriction tantamount to confinement, and advised Appellant to affirmatively waive the issue. We hold that there were reasonable explanations for these tactical decisions. As a result Appellant did not receive ineffective assistance of counsel. We will address each of these issues seriatim.

---

[1] United States v. Christian, 61 M.J. 146 (C.A.A.F. 2005). We granted review of the following issue raised by appellate defense counsel:

> I. BECAUSE LIFE WITHOUT PAROLE WAS NOT AN AUTHORIZED PUNISHMENT UNDER THE UNIFORM CODE OF MILITARY JUSTICE FOR FORCIBLE SODOMY OF A CHILD UNDER TWELVE YEARS OF AGE, WHETHER APPELLANT'S PRETRIAL AGREEMENT IS A NULLITY AND IT, AND THE FINDINGS AND SENTENCE WHICH WERE BASED UPON IT, SHOULD BE SET ASIDE AS APPELLANT ENTERED INTO THE AGREEMENT WITH A MATERIAL MISUNDERSTANDING OF THE MAXIMUM IMPOSABLE SENTENCE.

And the following issue personally asserted by Appellant:

> II. WHETHER APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL DEFENSE COUNSEL FAILED TO REQUEST CREDIT FOR APPELLANT'S ILLEGAL PRETRIAL RESTRAINT AND PRETRIAL CONFINEMENT AND THEN ADVISED APPELLANT TO AFFIRMATIVELY WAIVE THESE ISSUES.

## Factual Background

Congress passed a bill authorizing the court-martial punishment of confinement for LWOP on November 6, 1997.[2] The portion of this bill relevant to this case permitted a court-martial to adjudge a sentence of LWOP for "any offense for which a sentence of confinement for life may be adjudged."[3] The President signed that bill into law on November 18, 1997.[4]

At the time this law became effective, offenses for which a sentence of confinement for life may be adjudged and to which the new law would apply could arguably be identified in two ways. First, Congress could have explicitly provided for imprisonment for life for a particular offense.[5] Second, where the text of a punitive article did not provide for "imprisonment for life," or otherwise restrict the available sentence, the President in the Manual for Courts-Martial (MCM) may also have prescribed a life sentence for an offense.[6]

It is this second circumstance that is implicated in the present case. Appellant committed the offense of oral sodomy on a seven-year-old sometime in May 1998. At that time, the

---

[2] National Defense Authorization Act for Fiscal Year 1998, Pub. L. No. 105-85, § 581, 111 Stat. 1629, 1759 (1997) (codified at Article 56a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 856a (2000)).

[3] Article 56a, UCMJ.

[4] Signing Statement, 33 Weekly Comp. Pres. Doc. 1861 (Nov. 18, 1997) [hereinafter Signing Statement, Nov. 18, 1997].

[5] See Article 118, UCMJ, 10 U.S.C. § 918 (2000) (providing for a sentence for certain identified murder offenses as "death or imprisonment for life as a court-martial may direct").

[6] See MCM pt. IV, para. 51.e.(3) (1995 ed.) (providing for a sentence for sodomy with a child under the age of twelve years at the time of the offense of "confinement for life").

punitive article punishing Appellant's aggravated sodomy offense did not explicitly provide for a punishment of imprisonment for life but instead authorized a punishment "as a court-martial may direct."[7]  The MCM provided for a maximum punishment of "confinement for life."[8]  There had been no amendment to the MCM to suggest that LWOP was a permissible punishment for this offense.

On November 13, 2001, Appellant pled guilty to the commission of forcible sodomy of a child under twelve years of age and several other offenses in connection with the sexual molestation of his three minor stepdaughters and a thirteen-year-old friend of one of his stepdaughters.  The military judge advised Appellant that the maximum punishment for his offenses included LWOP, and the trial defense counsel agreed without objection.  Appellant entered into a pretrial agreement based on this assumption.  The military judge accepted Appellant's guilty plea, convicted him of the charged offenses, and eventually sentenced Appellant to a dishonorable discharge, confinement for sixteen years, forfeiture of all pay and allowances, and reduction to the grade of Private (E-1).

On April 11, 2002, after Appellant's court-martial, the President amended the MCM to identify LWOP as a permissible confinement punishment for an Article 125, UCMJ, offense, as

---

[7] Article 125, UCMJ, 10 U.S.C. § 925 (2000).
[8] MCM, pt. IV, para. 51.e.(3) (1995 ed.).

4

well as other offenses.[9]  Relying on this change to the MCM after his court-martial was complete, Appellant asserts on appeal that LWOP was not an authorized punishment for his aggravated sodomy offense committed in 1998.  In a per curiam unpublished opinion, the Army Court held the findings of guilty and the sentence as approved by the convening authority correct in law and fact.[10] We then granted Appellant's petition to review his case.

### Congressional Authorization of LWOP as Punishment

The primary issue in this case is whether LWOP was an authorized court-martial punishment for the crime of forcible sodomy of a child under twelve years of age during the period between enactment of the LWOP statute and the eventual changes in the MCM.  We conclude that the statute creating LWOP authorized this punishment after the date of its enactment, November 18, 1997.  As Appellant committed the offense of forcible sodomy of a child under twelve years of age in May 1998, LWOP was an authorized punishment.

The Framers of the Constitution entrusted in Congress the power "To make Rules for the Government and Regulation of the land and naval Forces[.]"  U.S. Const. art. I, § 8, cl. 14. Congress exercised this power by establishing the UCMJ. Importantly for our present purposes, in Articles 18, 36, and 56, UCMJ, Congress assigned specific responsibilities to the

---

[9] Exec. Order No. 13,262, 67 Fed. Reg. 18,773, 18,779 (Apr. 11, 2002).
[10] United States v. Christian, No. ARMY 20011021 (A. Ct. Crim. App. July 27, 2004).

President.[11]  These include the President's authority to establish rules of procedure for courts-martial and to prescribe limits on punishments authorized by the Congress.[12]

The Supreme Court, most recently in <u>Loving v. United States</u>, addressed the relationship between congressional Article I powers and the President's codal responsibilities.[13]  The Court reaffirmed both the primacy of the Congress "To make Rules for the Government and Regulation of the land and naval Forces"[14] and the flexibility of Congress to assign that authority to the President as conditions and circumstances may warrant.[15]  Simply stated, the legislative power in Article I, Clause 14, is not exclusive of the power of the President also to act pursuant to congressional assignment.

The Supreme Court supported these conclusions with historical analysis stating, "[H]istory does not require us to read Clause 14 as granting to Congress an exclusive, non-delegable power to determine military punishments. . . . The

---

[11] <u>Loving v. United States</u>, 517 U.S. 748, 769-70 (1996); Article 18, UCMJ, 10 U.S.C. § 818 (2000); Article 36, UCMJ, 10 U.S.C. § 836 (2000).
[12] <u>See</u> Articles 36, 56, UCMJ.
[13] <u>Loving</u>, 517 at 767.
[14] U.S. Const. art. I, § 8, cl. 14.
[15] <u>Loving</u>, 517 at 766-67 ("The lesson from the English constitutional experience was that Parliament must have the primary power to regulate the Armed Forces and to determine the punishments that could be imposed upon soldiers by courts-martial.  That was not inconsistent, however, with the further power to divide authority between it and the Crown as conditions might warrant. . . . Under Clause 14, Congress, like Parliament, exercises a power of precedence over, not exclusion of, Executive authority.").

Framers' choice in Clause 14 was to give Congress the same flexibility to exercise or share power as times might demand."[16]

Consistent with these principles, we view the President's exercise of his statutory responsibility under the UCMJ in the context of the constitutionally recognized primacy of the Congress to regulate the military justice system.[17]

Exercising its Article I power, Congress made the offense of sodomy punishable "as a court-martial may direct."[18]  Congress also assigned to the President Article 56, UCMJ, power to prescribe limits on punishments authorized by Congress.  Article 56, UCMJ, specifies that "[t]he punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense."

The President exercised this responsibility by executive orders published in the MCM.  At the time Appellant committed the offense of aggravated forcible sodomy, the President had established that the maximum punishment for the offense of forcible sodomy of a minor under the age of twelve was "confinement for life."[19]

As stated above, Congress passed the National Defense Authorization Act for Fiscal Year 1998[20] on November 6, 1997, and

---

[16] Id. at 760-61.
[17] Id. at 767.
[18] Article 125, UCMJ.
[19] MCM pt. IV, para. 51.e.(3) (1995 ed.).
[20] Pub. L. No. 105-85, § 581, 111 Stat. 1759.

it was signed into law by the President on November 18, 1997.[21]
The relevant portions of this law are now codified in Article
56a, UCMJ.  It states that a court-martial may adjudge a
sentence of LWOP for "any offense for which a sentence of
confinement for life may be adjudged."[22]

It is a well-established principle of statutory
construction that, absent a clear direction of Congress to the
contrary, a law takes effect on the date of its enactment.[23]
Applying this principle, the new LWOP statute became effective
on November 18, 1997, six months prior to Appellant's offense,
which occurred in May 1998.  The statute also provided that
Article 56a, UCMJ, will "be applicable only with respect to an
offense committed after the date of the enactment of this Act."[24]
As Appellant committed this offense six months after the
enactment of this act, the LWOP statute applied to his crime.

This Court typically seeks to harmonize independent
provisions of a statute.  Articles 56 and 56a, UCMJ, are
independent provisions.  Through the passage of Article 56a,
UCMJ, Congress did not disturb the President's existing Article
56, UCMJ, power to set maximum sentences and determine which
offenses are eligible for a life sentence.  Rather, in Article

---

[21] Signing Statement, Nov. 18, 1997.

[22] Article 56a, UCMJ; see also United States v. Ronghi, 60 M.J. 83, 85-86 (C.A.A.F. 2004).

[23] See Gozlon-Peretz v. United States, 498 U.S. 395, 404 (1991); Robertson v. Bradbury, 132 U.S. 491, 493 (1889); Arnold v. United States, 13 U.S. (9 Cranch) 104, 119-20 (1815); see also 2 Norman J. Singer, Sutherland Statutory Construction § 33:6 (6th ed. 2001).

[24] Pub. L. No. 105-85, § 581(b), 111 Stat. 1760.

56a, UCMJ, Congress spoke directly to the court-martial process by stating that when the President designates life as the maximum punishment, the court-martial has the authority to adjudge LWOP.[25] In this manner, it is clear that there is no conflict between Articles 56 and 56a, UCMJ.

The present case is distinguishable from this Court's holdings in both United States v. Ronghi[26] and United States v. Stebbins.[27] In both Ronghi and Stebbins, death was an authorized punishment for the crimes committed and LWOP was a lesser punishment than the maximum (death).[28] Therefore, we concluded that the MCM's maximum sentence provision did not conflict with the congressionally authorized sentence of LWOP.[29] In the present case we have explained that the independent provisions of this statute are in harmony.

We now hold that LWOP is an authorized punishment for Appellant's offense of forcible sodomy of a child under twelve years of age, which occurred after November 18, 1997. In light of this holding, we conclude that the pretrial agreement is both proper and lawful and Appellant's guilty plea was provident. In our view, Appellant was not misled as to the maximum permissible punishment of LWOP. The military judge correctly instructed Appellant as well as trial defense counsel that LWOP was an

---

[25] Article 56a(a), UCMJ.
[26] 60 M.J. at 86.
[27] 61 M.J. 366, 369-70 (C.A.A.F. 2005).
[28] Ronghi, 60 M.J. at 85; Stebbins, 61 M.J. at 369
[29] Ronghi, 60 M.J. at 85; Stebbins, 61 M.J. at 369.

available punishment for his offense.  Rejecting Appellant's challenge to the providency of his guilty plea, we turn to Issue II.

<u>Evaluation of the Claim of Ineffective Assistance of Counsel for Failure to Seek Credit for Pretrial Confinement</u>

Appellant also asserts that he received ineffective assistance of counsel because his trial defense counsel failed to advocate for confinement credit for Appellant's alleged illegal pretrial punishment and restriction tantamount to confinement and advised Appellant to affirmatively waive the issue.

The Supreme Court has established a two-pronged test to determine whether there has been ineffective assistance of counsel within the meaning of the Sixth Amendment:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.[30]

This Court developed a three-pronged test in <u>United States v. Polk</u>, 32 M.J. 150  (C.M.A. 1991), to determine whether an appellant has overcome the presumption of competence:

> (1) Are the allegations made by appellant true; and, if they are, is there a reasonable explanation for counsel's actions in the defense of the case? (2) If they are true, did the level of advocacy "fall[] measurably below the

---

[30] <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

10

performance . . . [ordinarily expected] of fallible lawyers"? (3) If ineffective assistance of counsel is found to exist, "is . . . there . . . a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt?"[31]

In the present case, we do not have to look beyond the first prong of the Polk analysis to realize that Appellant fails to establish ineffective assistance of counsel. Appellant alleges that his pretrial restraint was tantamount to confinement, and by not arguing for confinement credit, his trial defense counsel was ineffective. We hold that the Appellant has failed to show that his trial defense counsel's actions were not reasonable. As a result, Appellant has not demonstrated ineffective assistance of counsel.

According to Appellant, he was hospitalized at the 121 General Hospital in Korea on March 26, 2001, after writing a suicide letter to his wife the previous day. When Appellant returned to his unit at Fort Bragg, North Carolina, his commander placed him on restriction and ordered him to move to on-post quarters. Appellant told this information to his trial defense counsel prior to trial. At Appellant's duty stations both in Korea and at Fort Bragg, off-post privileges were revoked and Appellant was required turn in his identification card unless he needed access to facilities where the card would be needed. Appellant was also subjected to various reporting

---

[31] Polk, 32 M.J. at 153 (citations omitted).

requirements, which were reviewed repeatedly and, upon each review, the restrictions imposed were reduced.

Trial defense counsel could have reasonably concluded that the restrictions imposed on Appellant during his time in Korea were necessary in light of Appellant's suicide threat and therefore not restrictions tantamount to confinement. Appellant does not contest that he was hospitalized at the 121 General Hospital in Korea on March 26, 2001, after writing a suicide letter to his wife the previous day.

Upon arrival at Fort Bragg, Appellant's command imposed a series of necessary administrative measures to ensure Appellant's future safety as a result of his expressed suicidal intentions. Appellant's commander revisited these safeguards on numerous occasions and, upon each review, the commander reduced the restrictions imposed.

We note that upon departing Korea, Appellant spent thirty-six days on leave in Colorado before reporting to his duty in Fort Bragg, North Carolina on July 23, 2001. Appellant's new commander arrested him and preferred charges against him that same morning. According to Appellant, his restrictions included being restricted to post, being required to sign in with the staff duty noncommissioned officer, and having to remain in his barracks room during evening hours. Due to the serious nature of the charges (including the forcible sodomy of a child under

12

twelve years of age) and his emotional history in Korea, it would be reasonable for defense counsel to conclude that there was a legitimate purpose for the revocation of off-post privileges. This Court has been clear that revocation of off-post privileges is not restriction tantamount to confinement.[32] Here, it was reasonable to place initial restrictions on Appellant upon his return to the military post. As a result, trial defense counsel could reasonably conclude that the initial restrictions imposed on Appellant upon his return to the military post were not tantamount to confinement.

Thus, it would also be reasonable for a trial defense counsel to conclude that a claim of restriction tantamount to confinement may be held meritless at trial. Consequently, for tactical reasons, a defense counsel may want to avoid asserting such a claim. Moreover, we note that trial defense counsel discussed Appellant's restrictions with the military judge. Here, defense counsel appears to have made a reasonable tactical decision to offer the circumstances of Appellant's restriction as a factor in mitigation of the sentence instead of requesting confinement credit.[33]

---

[32] United States v. Powell, 2 M.J. 6, 7 (C.M.A. 1976); see also United States v. Guerrero, 28 M.J. 223, 225 (C.M.A. 1989); United States v. Rendon, 58 M.J. 221, 224 (C.A.A.F. 2003).

[33] United States v. Rock, 52 M.J. 154, 157 (C.A.A.F. 1999) ("Servicemembers are not entitled to sentence credit against confinement for any and all time during the pendency of court-martial charges, even if restraints on liberty which are not tantamount to confinement are imposed. Such periods of restraint, however, can often be useful to the defense in mitigation.").

In light of this conclusion, it follows that it was also a reasonable tactical decision for trial defense counsel to advise Appellant to affirmatively waive these issues.  As a result, the first prong of the <u>Polk</u> analysis has not been satisfied and Appellant did not receive ineffective assistance of counsel.

<u>DECISION</u>

The decision of the United States Army Court of Criminal Appeals is affirmed.