# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

**No. 201500379**

———————————————

### UNITED STATES OF AMERICA
Appellee

v.

### CHRISTOPHER M. HENEGAR
Gunnery Sergeant (E-7), U.S. Marine Corps
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel E. H. Robinson, Jr., USMC.
For Appellant: Lieutenant Colonel Richard A. Viczorek, USMCR.
For Appellee: Lieutenant James M. Belforti, JAGC, USN.

———————————————

Decided 18 August 2016

———————————————

Before PALMER, MARKS, and FULTON, *Appellate Military Judges*

———————————————

### PUBLISHED OPINION OF THE COURT

———————————————

PALMER, Senior Judge:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of one specification[1] each of attempted sexual assault of a child, attempted wrongful distribution of a controlled substance, and attempted sexual abuse of a child, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880. Initially, the military judge imposed a sentence of four years' confinement, reduction to pay grade E-3, a reprimand, and a bad-conduct discharge. Then, in a post-trial Article 39(a), UCMJ, session, the military judge resentenced the appellant to 24 months' confinement, a reprimand, reduction to pay grade E-

———

[1] Finding unreasonable multiplication of charges, the Military Judge merged the conduct in a second attempted sexual assault of a child specification with the first and conditionally dismissed that second specification.

3, and a dishonorable discharge. The convening authority approved the second sentence as adjudged.

The appellant raises two assignments of error: (1) that a dishonorable discharge is not mandatory for an Article 80, UCMJ, conviction for the attempted violation of Article 120b(b), UCMJ; and (2) that the convening authority purported to execute the appellant's discharge.[2] We disagree with the first assignment of error, and find no corrective action necessary on the second assignment of error.

The findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

During March 2015, the appellant began communicating online with "Liz," an undercover Naval Criminal Investigative Service agent. Liz told the appellant that she was 14 years old, and with this knowledge the appellant, over a period of weeks, communicated indecent language to her. On 5 May 2015, the appellant and Liz made arrangements to meet for sexual intercourse and oral sex. The appellant indicated that he would bring Concerta, a schedule II controlled substance. Later that day, the appellant drove to an on-base family housing area intending to give the Concerta to Liz and to engage in the charged sexual activity.

The appellant pleaded guilty pursuant to a pretrial agreement. Following adjournment, the military judge, *sua sponte,* directed an Article 39(a), UCMJ, session over concerns that the adjudged sentence was not authorized because it failed to impose a mandatory dishonorable discharge. Prior to this session, the appellant and the convening authority renegotiated the pretrial agreement's terms to include greater confinement protections and an acknowledgement that the appellant's attempted sexual assault of a child conviction "require[d] the sentencing authority to adjudge a dishonorable discharge."[3] Although the military judge offered the appellant an opportunity to withdraw from the pretrial agreement, the appellant insisted on continuing with the agreement and his guilty pleas. So without objection, the military judge re-sentenced the appellant to a dishonorable discharge, but only 24 months of confinement.

---

[2] The sentence was approved as adjudged by the convening authority and ordered executed in its entirety, "[s]ubject to the limitations contained in the Uniform Code of Military Justice, the Manual for Courts-Martial, applicable regulations, and this [General Court-Martial Order]. General Court-Martial Order No. 01-2015 of 5 November 2015 at 4.

[3] Appellate Exhibit VI at 3.

The appellant now argues that UCMJ Articles 18 and 56(a) and (b), and the MANUAL FOR COURTS-MARTIAL (MCM) Part IV provisions pertaining to the inapplicability of mandatory sentencing minimums for violations of Article 80, UCMJ, create an ambiguity regarding the application of a mandatory dishonorable discharge for attempted violations of Article 120b(b). Citing the "rule of lenity," the appellant asks us to "resolve [this] ambiguity in criminal laws in [his] favor," quoting *Whitman v. United States*, 135 S.Ct 352, 353 (2014)), set aside the sentence, and return the record to the convening authority for a sentence rehearing. We decline to do so.

## II. DISCUSSION

### A. Mandatory discharge

Article 18, UCMJ, states that general courts-martial "may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this chapter[.]" Article 56(a), UCMJ, states that "[t]he punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense." In 1991,[4] the President added the following:

> Any person subject to the code who is found guilty of an attempt under Article 80 to commit any offense punishable by the code shall be subject to the same maximum punishment authorized for the commission of the offense attempted, except that in no case . . . *shall any mandatory minimum punishment provisions apply*; and in no case, other than attempted murder, shall confinement exceeding 20 years be adjudged.

MCM, Part IV, ¶4.e. (emphasis added).[5] However, prior to the appellant's offense,[6] Congress amended Article 56(b), UCMJ, to require that punishment

---

[4] Exec. Order. No. 12,767, 3 C.F.R. 334 (1991).

[5] During the discussion of the appellant's pleas of guilty, the military judge and counsel agreed that he faced a maximum of 90 years' confinement for four specifications of Article 80, attempt. As none of the specifications alleged attempted murder, the maximum confinement under MCM, Part IV, ¶4.e was actually only 70 years. Although a "plea of guilty may be improvident because it is predicated upon a substantial misunderstanding on the accused's part of the maximum punishment . . . even a substantial difference may not be material to an accused." *United States v. Harden*, 1 M.J. 258, 259-60 (C.M.A. 1976) (citations and internal quotation marks omitted). In this case, the appellant ultimately secured a pretrial agreement limiting his confinement to 36 months and was adjudged 24 months' confinement. Balancing the sentenced confinement against the difference between a maximum of 70 and 90 years of confinement, we decline to find this misunderstanding, even if substantial, as having a material impact on the providence of his plea. *See United States v. Adams*, 2 M.J. 580, 581 (N.C.M.R. 1976) (The appellant's mistaken belief that he

adjudged by a general court-martial "must include, at a minimum, dismissal or dishonorable discharge" for any Article 80, UCMJ, attempt conviction for "[r]ape and sexual assault of a child" under Article 120b(a) or (b).[7]

We review questions of statutory construction as questions of law *de novo.* *United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014). When a statute's language "has a plain and unambiguous meaning" and "the statutory scheme is coherent and consistent[,]" judicial "inquiry ceases." *McPherson*, 73 M.J. at 395 (quoting *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002)). Additionally, when interpreting the UCMJ, we typically seek to harmonize independent provisions. *See United States v. Christian*, 63 M.J. 205, 208 (C.A.A.F. 2006); *see also United States v. Bartlett*, 66 M.J. 426, 428 (C.A.A.F. 2008) ("[w]hile statutes covering the same subject matter should be construed to harmonize them if possible, this does not empower courts to undercut the clearly expressed intent of Congress in enacting a particular statute.") (citations omitted).

"The Constitution invests in Congress the authority 'to make Rules for the Government and Regulation of the land and naval Forces,' including the power to define criminal punishments, as well as to delegate that authority to the President." *United States v. Booker*, 72 M.J. 787, 799 (N-M. Ct. Crim. App. 2013) (citing *Loving v. United States*, 517 U.S. 748, 759, 767-68 (1996)). Congress may legislate directly on some aspects of a military punishment, while leaving other aspects to the President's discretion. *See Loving*, 517 U.S. at 770 (citing with approval the death penalty provisions in Article 106a, UCMJ, wherein Congress "enumerate[d] three [aggravating] factors" any one of which would allow court-martial members to adjudge the death penalty, and also allowed "death to be decreed on any other factor that may be prescribed by the President") (citation and internal quotation marks omitted).

could be awarded ten years' confinement, when the actual maximum was only two years, did not mislead him to plead guilty when his pretrial agreement limited confinement to one year.)

[6] National Defense Authorization Act for Fiscal Year 2014. Pub. L. No. 113-66, § 1705, 127 Stat. 672, 959 (2013).

[7] The only exceptions to the mandatory minimum, authorized by Congress at § 856(b)(1), are on "recommendation of the trial counsel," or when the accused enters into a specific pretrial agreement. 10 U.S.C. § 860(c)(4) (2016) ("If a mandatory minimum sentence of a dishonorable discharge applies . . . the convening authority or another person authorized to act under this section may commute the dishonorable discharge to a bad-conduct discharge pursuant to the terms of the pre-trial agreement." Here, there was neither a recommendation, nor did the pretrial agreement commute the dishonorable discharge. *See* AE III at 1 ("Punitive Discharge: May be approved as adjudged.").

Moreover, Congress is not required to refrain from legislating on a particular military punishment topic after previously delegating authority to the President. *See Loving*, 517 U.S. at 760-61 (noting that "[t]he Framers' choice . . . was to give Congress the same flexibility to exercise or share power as times might demand," as inspired by the English concept of "divided authority, with Parliament at times ceding to the Crown the task of fixing military punishments"); *United States v. Curtis*, 32 M.J. 252, 257-61 (C.M.A. 1991) (recognizing that Congress could legislate aggravating factors for the capital offense of Article 106a, UCMJ, after the President had previously defined aggravating factors for all capital offenses in RCM 1004).

"[T]he constitutionally recognized primacy of the Congress to regulate the military justice system" limits "the President's exercise of his statutory responsibility under the UCMJ[.]" *Christian*, 63 M.J. at 208. *See, e.g.*, *United States v. Johnson*, 3 M.J. 361, 363 & n.11 (C.M.A. 1977) (declining to recognize an MCM provision punishing "the private act of false imprisonment" under Article 97, UCMJ, because "the history and construction of the statute as a whole establishes a contrary legislative purpose") citing *United States v. Jenkins*, 22 C.M.R. 51 (C.M.A. 1956) (holding that the President could not use the MCM to subject draftees to Article 83, UCMJ, where "Congress expressly failed to utilize such language" in statutory definitions).

Thus, we cannot effect a Presidential directive which "clearly contradicts the express language of the Code," even if it purports to "unambiguously give[] an accused greater rights than those conveyed by higher sources[.]" *United States v. Davis*, 47 M.J. 484, 486 (C.A.A.F. 1998). Indeed, the Rules for Courts-Martial acknowledge that a Congressional statute imposing a mandatory minimum must prevail, even if it precludes a court-martial from adjudging a lesser punishment to the benefit of the accused. *See* RULE FOR COURTS-MARTIAL 1002, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) ("[*E*]*xcept when a mandatory minimum sentence is prescribed by the code*, a court-martial may adjudge any punishment authorized in this Manual") (emphasis added).

Here, the appellant pleaded guilty to a specification of attempted sexual assault of a child, Article 120b(b), UCMJ, in violation of Article 80, UCMJ. Congress unambiguously provided in Article 56(b), UCMJ, that punishment adjudged for this offense "must include, at a minimum . . . [a] dishonorable discharge." Article 56(b), UCMJ, is coherent within a statutory scheme (including Articles 18 and 56(a), UCMJ) that generally allows the President to set limits on punishment. But Congress's *specific* mandatory minimum punishment statute prevails over statutes allowing the President to *generally* limit minimum punishment. We find the President's statement in MCM, Part IV, ¶4.e, that no "mandatory minimum punishment provisions apply" to

Article 80, UCMJ, clearly contradicts Article 56(b), UCMJ, for attempted sexual assault of a child (among other offenses). Thus, we conclude the mandatory dishonorable discharge term, as set forth by Congress, applies to the appellant.

## B. Convening authority's action

Turning to the appellant's second assignment of error, the law is clear that a convening authority cannot execute a punitive discharge "until there is a final judgment as to the legality of the proceedings" by a Court of Criminal Appeals. Art. 71(c)(1), UCMJ. When a convening authority purports to prematurely execute a discharge, such action is "a nullity." *United States v. Bailey*, 68 M.J. 409 (C.A.A.F. 2009). No corrective action is necessary in such a circumstance. *United States v. Glowner*, No. 201100013, 2011 CCA LEXIS 523, at *3, unpublished op.) (N-M. Ct. Crim. App. 26 Jul 2011) (per curiam); *United States v. Abercrombie*, No. 201500279, 2016 CCA LEXIS 167, at *7, unpublished op. (N-M. Ct. Crim. App. 17 Mar 2016) (per curiam).

In this case, under facts nearly identical to *Glowner* and *Abercrombie*, the convening authority purportedly executed a dishonorable discharge prior to final review by this court. While a reviewing court can—as noted by the appellant—instruct a convening authority to clarify an ambiguous order, no ambiguity exists here. The convening authority's action is null in so far as it purports to execute the dishonorable discharge, and thus, corrective action is not needed.

Finally, as a collateral matter, we note the convening authority's action incorrectly states the court-martial dates as 17 June and 26 August 2015, when in fact the trial occurred on 17 August, 25 August, and 4 September 2015. Although the appellant has not claimed any prejudice from the errors and we do not find any, he is entitled to records that correctly reflect the results of his trial. *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998). Accordingly, we order the necessary corrective action in our decretal paragraph.

### III. CONCLUSION

The findings and the sentence as approved by the convening authority are affirmed. The supplemental court-martial order shall reflect the correct court-martial dates of 17 August, 25 August, and 4 September 2015.

Judge MARKS and Judge FULTON concur.

For the Court

R.H. TROIDL
Clerk of Court



6