# UNITED STATES NAVY–MARINE CORPS
# COURT OF CRIMINAL APPEALS

———————————

### No. 201600421

———————————

### UNITED STATES OF AMERICA

Appellee

v.

### JUSTIN W. SCHMIDT

Staff Sergeant (E-6), U.S. Marine Corps

Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Eugene H. Robinson, Jr., USMC.
Convening Authority: Commanding General, III Marine
Expeditionary Force, Okinawa, Japan.
Staff Judge Advocate's Recommendation: Lieutenant Colonel
Christopher B. Shaw, USMC.
For Appellant: Commander R. D. Evans, Jr., JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Lieutenant Taurean K. Brown, JAGC, USN.

———————————

Decided 31 January 2018

———————————

Before HUTCHISON, FULTON, and SAYEGH, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited
as persuasive authority under NMCCA Rule of Practice and
Procedure 18.2.**

———————————

HUTCHISON, Senior Judge:

At an uncontested general court-martial, a military judge convicted the
appellant of one specification each of attempted sexual assault of a child,
attempted sexual abuse of a child, and attempted adultery, in violation of

Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880. The military judge sentenced the appellant to a reprimand, 36 months' confinement, reduction to paygrade E-1, and a dishonorable discharge. The convening authority (CA) disapproved the reprimand but approved the remainder of the sentence as adjudged.

The appellant raises five assignments of error: 1) the government's delay in carrying out the pretrial agreement's forfeiture provision was unreasonable; 2) the detailed defense counsel should have withdrawn from representation after the appellant accused her of incompetence; 3) the staff judge advocate (SJA) misrepresented to the CA that the appellant did not demand speedy review or raise speedy review concerns; 4) the government failed to submit a complete record for appellate review;[1] and 5) mandatory minimum punishments do not apply to attempted violations of Article 120b, UCMJ.[2] Having carefully considered the record of trial and the parties' submissions, we conclude the findings and sentence are correct in law and fact and find no error materially prejudicial to the appellant's substantial rights. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant entered into a pretrial agreement (PTA) with the CA and agreed to plead guilty to three attempt specifications arising from his online interactions with a Naval Criminal Investigative Service undercover agent posing as a 14-year-old girl. In exchange for his guilty pleas, the CA agreed, *inter alia*, to suspend any confinement adjudged in excess of 18 months and to defer and then waive any automatic forfeiture of pay. Regarding the automatic forfeiture provision, the PTA provided:

> Automatic forfeiture of any pay and allowances I am due during my enlistment in the amount of $3,674.40 per month will be deferred and waived provided that I establish and maintain a dependent's allotment in the total amount of the deferred and waived forfeiture amount during the entire period of deferment. . . This agreement constitutes my request for, and the convening authority's approval of, deferment and waiver of automatic forfeitures in the amount of $3,674.40 per month pursuant to Article 58b(a)(1), UCMJ. The period of deferment

---

[1] On 6 June 2017, we granted the government's motion to attach documents missing from the record of trial, rendering this assignment of error moot.

[2] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Having already resolved this issue in *United States v. Henegar*, 75 M.J. 772 (N-M. Ct. Crim. App. 2016), *rev. denied*, 76 M.J. 40 (C.A.A.F. 2016), we summarily reject this assignment of error. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

will run from the date automatic forfeiture would otherwise become effective under Article 58b(a)(1), UCMJ, until the date the convening authority acts on the sentence. . . I understand that the period of waiver may not exceed six (6) months from the date of convening authority's action. The convening authority agrees that the period of waiver will run six (6) months from the date of the convening authority's action.[3]

The specific dollar figure in the PTA provision—$3,674.40—represented the appellant's basic pay as a staff sergeant (E-6). However, the PTA provided no protection from automatic or adjudged reduction to paygrade E-1.

Because of this incongruity, following the conclusion of the trial, the trial counsel (TC) sent the military judge an e-mail to bring this issue to his attention. The TC indicated the parties might need to "go back onto the record" to "make sure [the appellant] understood that once automatic reduction went into effect, that he would no longer receive [E-6] pay."[4] The military judge reminded the TC that the CA agreed to defer and waive a specific dollar amount and that the easiest course of action for the CA would be to suspend the reduction to E-1. The military judge then warned that, "[o]therwise, there does not appear to be a meeting of the minds on this provision[.]"[5]

Three weeks after trial, on 27 May 2016, the government moved for a post-trial, Article 39(a), UCMJ, session to "inquire into potentially conflicting interpretations of the forfeiture provisions" in the PTA.[6] The detailed defense counsel opposed the government's motion, arguing that the government was asking her to disclose the appellant's understanding of the PTA in order to protect the record or to "withdraw from the agreement."[7] On 8 July 2016, the military judge ordered a post-trial Article 39(a), UCMJ, session for 19 July 2016—two and a half months after the appellant pleaded guilty.

During the Article 39(a), UCMJ, session, the military judge concluded the forfeiture provisions of the PTA were clear and required no further inquiry:

---

[3] Appellate Exhibit (AE) II at 1-2.

[4] AE V at 12.

[5] *Id.*

[6] *Id.* at 1.

[7] AE VII at 3.

> There is no need to inquire into the [appellant] about what his understanding was. The Court understands it's $3,674.40 per month. It's in black and white. It's right there.[8]

The military judge went on to explain, before adjourning the Article 39(a), UCMJ session, that there were three options for resolving the forfeiture provision dispute: "specific performance of the term," the appellant's withdrawal from the PTA, or alternative relief consented to by the appellant.[9]

On 26 September 2016, the appellant requested mast with the CA.[10] In a five-page letter attached to his request, the appellant explained that after signing his PTA, he and his wife began aggressively paying off debts and "crafted a budget that would enable [them] to stretch the 6 months of post-trial pay to cover . . . essentials as well as regular payments on all of [their] bills[.]"[11] In addition, the appellant expressed his frustration with his detailed defense counsel for the confusion and uncertainty caused by the PTA's forfeiture provision and for "foolishly" resisting the government's request for an Article 39(a), UCMJ, session.[12] The appellant also noted that the "complete lack of competency" caused him to hire a civilian defense counsel and further aggravate his financial condition.[13] On 29 September 2016, the CA denied the appellant's request, noting that he had not yet taken action on the case. However, on 21 October 2016—three months after the post-trial Article 39(a), UCMJ, session—the CA retroactively deferred the appellant's adjudged reduction in grade so "as to ensure [the appellant] receive[d] the benefit of his bargain under the [PTA]—deferral of automatic forfeiture of pay in the amount of $3.674.40 per month from the date of his adjudged sentence until the date . . . [the CA took] action on his court-martial."[14]

---

[8] Record at 113.

[9] *Id.* at 114.

[10] *See* Appellee's Motion to Attach of 25 May 17, App. 3. Requesting mast is the process by which individuals in the Naval service request to communicate directly with their commanding officer. *See* U.S. Navy Regulations, Art. 1151.1 (1990) ("The right of any person in the naval service to communicate with the commanding officer in a proper manner, and at a proper time and place, shall not be denied or restricted.").

[11] Clemency ltr of 17 Nov 16, encl (3) at 1.

[12] *Id.* at 3. "My defense counsel has failed at every turn to either object to or contest the Government's breach of my PTA." *Id.* at 4-5.

[13] *Id.* at 3-4.

[14] Appellee's Second Motion to Attach of 15 Jun 17 at App 1; CG, III MEF ltr 5814 Ser SJA of 21 Oct 16.

Following receipt of the SJA's recommendation (SJAR), the appellant submitted clemency through his detailed defense counsel. Enclosed with the appellant's request for clemency were, among other items, the five-page request mast letter and a Prisoner Restoration/Return to Duty, Clemency and Parole Statement, that the appellant submitted to the Head, Navy Clemency and Parole Board (NCPB letter), on 28 October 2016. Like the request mast letter, the NCPB letter was critical of the detailed defense counsel's performance. In the NCPB letter, the appellant claimed that the detailed defense counsel "was pushing for [a PTA] before she had even seen my charge sheet" because attorneys in the region were "unqualified to litigate the intricacies of a sexual assault case."[15]

In response to the appellant's clemency request, the SJA submitted an addendum to his recommendation, enclosing the appellant's clemency matters and noting that there was post-trial delay in excess of 120 days. *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006) (applying a presumption of unreasonable delay when the CA does not take action within 120 days of the completion of trial). However, the SJA noted that the delay was occasioned by the appellant's request for additional time to submit post-trial matters and that the appellant "did not demand speedy review nor raise speedy review concerns in his post-trial matters."[16]

On 30 November 2016, the CA took action on the case and suspended the adjudged and automatic reduction to E-1 and waived automatic forfeitures for six months, "to ensure the [appellant] receive[d] the agreed upon amount of $3,674.40 pay per month for six (6) months to be paid to his dependent[.]"[17]

## II. DISCUSSION

### A. PTA forfeiture provision

The appellant avers that the five-month delay in deferring his adjudged reduction in rank was unreasonable and breached a material term of the PTA.

Interpretation of a PTA is a question of law which we review *de novo. United States v. Lundy (Lundy III)*, 63 M.J. 299, 301 (C.A.A.F. 2006). Whether the government complied with the material terms and conditions of

---

[15] Clemency ltr of 17 Nov 16, encl (1) at 4-5; NCPB Letter at 4-5. On appeal, however, the appellant asserts only that his detailed defense counsel was ineffective in her *post-trial* representation.

[16] SJAR Addendum of 21 Nov 16 at 1. The detailed defense counsel submitted an additional request for clemency on 30 November 2016, but did not comment on the post-trial delay or request speedy post-trial review.

[17] CA's Action of 30 Nov 16 at 3.

an agreement is a mixed question of law and fact. *Id.* The court must examine the entire record to determine whether the timing of payment was material to the appellant's decision to plead guilty. *Id.* at 303 (citing *United States v. Perron*, 58 M.J. 78, 85 (C.A.A.F. 2003)). "The appellant has the burden of establishing that the term or condition of the agreement was material to his decision to plead guilty, and that the government failed to comply with that term or condition." *United States v. Hatcher*, No. 200900572, 2010 CCA LEXIS 396, at \*7, unpublished op. (N-M. Ct. Crim. App. 21 Dec 2010) (citing *Lundy III*, 63 M.J. at 302).

The record is clear that the appellant's decision to plead guilty was based, in part, on the CA's promise to defer and waive automatic forfeitures in the amount of $3,674.40 per month. Consequently, we conclude the forfeiture provision of the PTA was a material term. However, our inquiry must go further. We must decide whether the *timing* of the government's performance under the PTA was a material term, and if it was, whether the CA's delay in deferring the appellant's adjudged reduction in rank—thereby making the agreed upon payment of $3,674.40 per month to the appellant's wife possible—was so unreasonably dilatory as to constitute noncompliance. We conclude that it was not.

As a threshold matter, we note that the PTA was silent regarding *when* the CA was required to take the administrative actions necessary to defer imposition of forfeitures in the amount of $3.674.40.[18] The PTA simply states that "[a]utomatic forfeiture of any pay and allowances . . . will be deferred" and "[t]his Agreement constitutes [the appellant's] request for and the [CA's] approval of, deferment . . . of automatic forfeitures . . . ."[19] The appellant argues that language in the PTA defining the deferment period "contemplates that the timing of payments to [the appellant's wife] was material to the agreement."[20] Specifically, the PTA provides that "[t]he period of deferment will run from the date automatic forfeiture would otherwise become effective under Article 58b(a)(1), UCMJ, until the date the convening authority acts on the sentence." We find this language simply defines the

---

[18] The CA did, in fact, take administrative action to defer imposition of automatic forfeitures immediately following trial by sending a letter to the Director, Installation Personnel Administration Center, directing the deferral and payment of automatic forfeitures to the appellant's wife. *See* Appellee's Motion to Attach of 25 May 17, App. 1; CG, III MEF ltr 5814 Ser SJA of 5 May 2016. But because the PTA provided no relief from the adjudged reduction in rank—and the CA did not immediately provide such relief—the deferred forfeitures were paid to the appellant's wife at the E-1 rate of $1,566.90, vice the E-6 rate of pay.

[19] AE II at 1-2.

[20] Appellant's Brief of 17 Feb 17 at 23.

period in which the appellant remained entitled to pay under the PTA, but does not impose any deadline on the CA.

Regardless, even assuming that the timing of the government's performance under the PTA was material to the agreement and thus, to the appellant's decision to plead guilty, we conclude that the CA's administrative actions to both defer automatic forfeitures and to subsequently—and retroactively—defer the appellant's adjudged reduction in rank, *prior to taking action*, constituted compliance. The appellant cites no case—and we have found none—that holds a CA's pre-action deferral constitutes noncompliance if it does not happen immediately after trial or before the effective date of the sentences.[21] Rather, in those cases where we have found timing to be a material term and set aside a guilty plea as improvident, our analysis has focused not on how long the CA had to comply with the material terms of a PTA, but instead on the potential appellate remedy when the government fails to comply.[22] Unlike those cases, the appellant here did receive his full entitlement to E-6 pay.

In *United States v. Lundy (Lundy II)*, 60 M.J. 52 (C.A.A.F. 2004), the Court of Appeals for the Armed Forces (CAAF) examined a similar argument related to forfeitures. In *Lundy II*, the CA agreed to defer and then suspend any reduction in grade and to defer and then waive for six months any forfeiture of pay, so that Lundy's wife would receive the deferred and waived forfeitures at the E-6 rate. However, the parties and the military judge overlooked an Army regulation that prevented a CA from suspending a mandatory reduction in grade. As a result, Lundy's wife received waived forfeitures at the E-1 rate. While the CAAF ultimately found a material breach in the government's failure to provide the agreed upon forfeiture

---

[21] *See* Article 57, UCMJ, 10 U.S.C. § 857 ("(1) Any forfeiture of pay or allowances or reduction in grade that is included in a sentence of a court-martial takes effect on the earlier of—(A) the date that is 14 days after the date on which the sentence is adjudged; or (B) the date on which the sentence is approved by the convening authority."); Article 58b, UCMJ, 10 U.S.C. § 858b (Automatic forfeiture of pay "shall take effect on the date determined under section 857(a) of this title (article 57(a)").

[22] *See e.g., United States v. Flores,* No. 200501199, 2007 CCA LEXIS 73, unpublished op. (N-M. Ct. Crim. App. 15 Mar 2007) (concluding that despite CA's deferral, suspension, and waiver of reductions in grade and forfeitures, the appellant only received E-1 pay vice the agreed upon E-6 rate and that since timing was a material term, it could not order specific performance and could not order alternative relief—late payment—without the appellant's consent); *Id.* at *9 ("If . . . the timing of the payments is material, then belated payment cannot be treated as specific performance, but would constitute alternative relief, which we may not substitute without the appellant's consent) (citing *Lundy III*, 63 M.J. at 305 (Effron, J., concurring); *Perron*, 58 M.J. at 85-86).

amount, the court recognized that "[d]uring the six-month period in which [Lundy's] wife received the waived forfeitures at the E-1 rate, it was *still possible to fulfill the agreement*." *Lundy II*, 60 M.J. at 58 (emphasis added). The court noted that Army officials could have granted a waiver or exception to their policy in order to provide the waived forfeitures at the E-6 rate. Here, although the appellant initially received deferred forfeitures at the E-1 rate, the CA ultimately deferred the appellant's adjudged reduction to E-1 *prior to taking action* and ensured the deferral was retroactive to encompass the entire period of deferral. The appellant received the full benefit of his bargain. Consequently, although there was delay, we do not find the delay so unreasonable as to amount to noncompliance.

Finally, even if we did find government noncompliance with a material term of the PTA, we would still deny relief. "'When the issue on appeal involves delayed timing of performance by the government, the question of whether belated performance constitutes an adequate remedy must be assessed on a case-by-case basis.'" *Hatcher*, 2010 CCA LEXIS 396, at *11 (quoting *Lundy III*, 63 M.J. at 305 (Effron, J. concurring in part and in the result)). The appellant has received the benefit of his bargain. Although the appellant alleges that the delayed performance by the government caused him financial distress, he has failed to demonstrate any actual harm resulting from the CA's delayed deferral. Indeed, the confusion caused by the PTA's forfeiture provision resulted in extended post-trial review that included a post-trial Article 39(a), UCMJ, session. This longer-than-normal period prior to the CA's action resulted in the appellant being paid retroactively over a six-month deferment term. As a result, the appellant's wife received additional payments of $3,674.40 she would not have received had the CA simply deferred the adjudged reduction in rank immediately following trial.

## B. Detailed defense counsel performance

The appellant avers his detailed defense counsel was "no longer legally competent to represent [him] in the post-trial process" because of an actual conflict of interest.[23] The alleged conflict of interest arose after the appellant criticized his detailed defense counsel's competency and performance in both his Request Mast letter and the NCPB letter.[24] The appellant argues that "he

---

[23] Appellant's Brief at 33.

[24] The appellant does not allege on appeal that his detailed defense counsel was incompetent or deficient *at trial*; only that her representation *post-trial* was burdened by a conflict of interest. *See Id.* at 27 ("[T]he alleged ineffective assistance occurred post-trial.").

suffered prejudice as a result of [his detailed defense counsel's] conflicted representation."[25]

We review ineffective assistance of counsel claims *de novo. United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015). The Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). This right to representation necessarily includes the "correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981) (citations omitted)). Generally, in order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice. *United States v. Green*, 68 M.J 360, 361 (C.A.A.F. 2010) . However, in this case we need not determine whether the detailed defense counsel's performance was deficient. "Rather, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *United States v. Datavs*, 71 M.J. 420, 424-25 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 697) (alteration in original). In the post-trial context, "there is material prejudice to the substantial rights of an appellant if there is an error and the appellant 'makes some colorable showing of possible prejudice.'" *United States v. Wheelus,* 49 M.J. 283, 289 (C.A.A.F. 1998) (quoting *United States v. Chatman*, 46 M.J. 321, 323-24 (C.A.A.F. 1997)).

Conflicts of interest do not necessarily demonstrate prejudice under *Strickland's* second prong. *United States v. Saintaude*, 61 M.J. 175, 180 (C.A.A.F. 2005). But when a defendant can show "that a conflict of interest actually affected the adequacy of his representation[, he] need not demonstrate prejudice in order to obtain relief." *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980) (citation omitted); *see also United States v Hale*, 76 M.J. 713, 722 (N-M. Ct. Crim. App. 2017) (holding that an appellant is entitled to presumption of prejudice where his counsel labored under an actual conflict of interest, and where the conflict had an adverse effect on the counsel's performance), *aff'd*, __ M.J. __, 2017 CAAF LEXIS 1166 (C.A.A.F Dec. 20, 2017)).

Regardless of which standard we apply—*Cuyler* or *Strickland*—the appellant is entitled to no relief. First, we conclude any conflict present here did not have an adverse effect on the counsel's performance. An adverse effect on counsel's performance requires an "actual lapse in representation." *Cuyler*, 446 U.S. at 349. As we noted in *Hale*, "[t]o prove a lapse in representation, an

---

[25] *Id.* at 33.

appellant must show that some plausible alternative defense strategy or tactic might have been pursued, but was not, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Hale,* 76 M.J. at 722-723 (citations and internal quotation marks omitted).

Here, the appellant has failed to demonstrate what plausible alternative strategy or tactic might have been pursued. Article 60, UCMJ, limited the CA's ability to grant clemency in this case to action on the adjudged reprimand, the adjudged and automatic reduction in rank, and the automatic forfeitures—all actions the CA took in granting relief to the appellant *after* the detailed defense counsel submitted two separate clemency requests.[26] Given this result, the appellant has failed to demonstrate what plausible alternative strategy or tactic might have been pursued.

Likewise, analyzing prejudice under *Strickland's* second prong, the appellant has made no colorable showing of possible prejudice. The CA granted all of the clemency he had the authority to grant pursuant to Article 60, UCMJ: he disapproved the reprimand, suspended confinement in excess of 18 months pursuant to the PTA, suspended both adjudged and automatic reduction to paygrade E-1 for six months, and waived automatic forfeiture of pay for the maximum period of six months.[27] Therefore, the appellant cannot adequately describe what the convening authority "might have done to structure an alternative form of clemency" because no alternate form of clemency was available. *United States v. Capers*, 62 M.J. 268, 270 (C.A.A.F. 2005).

## C. Staff judge advocate's recommendation

Finally, the appellant contends that the SJA misled the CA when he informed him "the accused did not demand speedy review nor raise speedy review concerns in his post-trial matters."[28] The appellant argues that throughout the post-trial process—in his Request Mast letter, his NCPB letter, and in the detailed defense counsel's initial clemency request—he complained about the government's inaction and delay.

While the appellant did complain of delay, his complaints were couched in terms of his desire for the CA to defer his adjudged reduction to E-1 and

---

[26] Her first request included both the appellant's Request Mast letter and the NCPB letter, despite the criticisms each letter leveled against her. *See* Clemency ltr of 17 Nov 16.

[27] CA's Action at 2-3.

[28] SJAR Addendum at 1, ¶ 4.

restoration of his E-6 pay.[29] The appellant never demanded that the CA expedite *action* on the case pursuant to Article 60, UCMJ. As a result, the SJA did not mislead the CA.

In any event, the appellant was not prejudiced by the SJA's comments.[30] Like our post-trial ineffective assistance of counsel review above, when assessing claims of error in the SJAR, we only "require that the appellant make 'some colorable showing of possible prejudice.'" *United States v. Stevens*, 75 M.J. 548, 552 (N-M. Ct. Crim. App. 2015) (quoting *Chatman*, 46 M.J. at 323-24), *rev. denied*, 75 M.J. 233 (C.A.A.F. 2016)). We find that the appellant has not met even this low threshold. In taking his action on the appellant's case, the CA considered all of the matters presented by the appellant, including the Request Mast letter, the NCPB letter, and the detailed defense counsel's clemency petitions. As a result, the CA was acutely aware of the appellant's concerns regarding delay and subsequently granted all available clemency. Therefore, we find no colorable showing of possible prejudice, even if the SJA's comments may have misled the CA.

## III. CONCLUSION



The findings and sentence are affirmed.

Judge FULTON and Judge SAYEGH concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[29] *See* Appellant's Request Mast letter at 4 ("It has now been 147 days since my trial and 70 days since my 39[a] hearing. . . . I continue to not receive the promised benefit of my PTA."); NCPB Letter at 15 ("It should not have taken 6 months for the [CA] to decide to honor a PTA); Clemency ltr of 17 Nov 16 at 2 ("[The appellant's] family has also suffered financial hardship due to the late action taken on the deferral of reduction to E-1. . . . They suffered financial difficulty that would not [have] occurred had the deferral of his reduction taken place in May 2016.").

[30] The appellant does not allege any error related to his right to speedy post-trial review, *see Moreno*, 63 M.J. at 142, only that the SJA misled the CA.